**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

− − − − − − − − − − − − − − − − − − − − − − − − − − X

**PLAZA MOTORS OF BROOKLYN, INC. d/b/a PLAZA HONDA, PLAZA AUTOMOTIVE, LTD. d/b/a PLAZA KIA, CRYSTAL BAY IMPORTS LTD. d/b/a ACURA OF BROOKLYN, PLAZA OLDSMOBILE, LTD. d/b/a PLAZA TOYOTA, PLAZA HYUNDAI, LTD, d/b/a PLAZA HYUNDAI, AND CRYSTAL MOTORS OF BAYSIDE, LTD d/b/a PLAZA AUTO LEASING,**

Case No.: 1:20-cv-4851

Plaintiff(s),

**COMPLAINT**

- against -

**ANDREW M. CUOMO,** Governor of the State of New York, in his official capacity,

**BILL DE BLASIO,** Mayor of the City of New York, in his official capacity, and

**EMPIRE STATE DEVELOPMENT CORPORATION,**

Defendant(s).

− − − − − − − − − − − − − − − − − − − − − − − − − − X

Plaintiffs Plaza Motors of Brooklyn, Inc. d/b/a Plaza Honda, Plaza Automotive, Ltd. d/b/a

Plaza Kia, Crystal Bay Imports, Ltd. d/b/a Acura of Brooklyn, Plaza Oldsmobile, Ltd. d/b/a Plaza

Toyota, Plaza Hyundai, Ltd, d/b/a Plaza Hyundai, and Crystal Motors of Bayside, Ltd d/b/a Plaza

Auto Leasing, (hereinafter the "Plaintiffs" or the "Dealerships"), by and through their counsel,

Milman Labuda Law Group PLLC, hereby complain as follows:

### NATURE OF THE ACTION

1.   This civil rights action seeks a temporary restraining order, declaratory judgment, and

injunctive relief for violations committed by the Defendants, acting under color of state law,

1

against Plaintiffs, depriving Plaintiffs' rights as guaranteed by Article I, §§ 8 and 10, as well as the Ninth, Tenth, and Fourteenth Amendments of the United States Constitution, for violations of New York Executive Law (hereinafter "Executive Law") § 29-a, and Articles III, §1; IV, §§ 1 and 3; and VI of the New York Constitution.

2.   Specifically, this case seeks redress against New York's Executive Order No. 202.68 ("EO 202.68"), which requires Plaintiffs' automobile dealerships to conduct sales remotely, send their workforce home, which, with all intents and purposes, will cause the closure of Plaintiffs' businesses as they will be unable to compete with other dealerships mere miles away who will be operating on a completely different playing field as they remain permitted to conduct sales in person.

3.   The Empire State Development Corporation ("ESD") has issued guidelines related to EO 202.68 stating that "essential business" includes automotive sales conducted remotely or electronically, with in-person vehicle showing, return, and delivery by appointment only.  See https://esd.ny.gov/ny-cluster-action-initiative-guidance.

4.   EO 202.68 significantly impedes the ability of the Dealerships to operate and compete with other dealerships merely a couple miles away as it prevents the automotive sales process from being performed by the Dealerships in person and will prevent the Dealerships from doing business with ordinary citizens in New York in person following appropriate and mandated social distancing measures, resulting in customers purchasing and leasing vehicles from dealerships a few miles away through in person sales.

5.   EO 202.68 will be enforced no later than Friday, October 9, 2020.

6.   Plaintiffs have standing to obtain a federal pre-enforcement ruling challenging the constitutionality of a state law because the Plaintiffs intends to engage in a course of conduct

arguably affected with a constitutional interest, but proscribed by a law, and there exists a credible threat of prosecution thereunder such that Plaintiffs should not be required to await and undergo civil or criminal prosecution as the sole means of securing relief.

## PARTIES

7.   Plaintiffs are automobile dealerships located at 2740 Nostrand Avenue, 2722 Nostrand Avenue, 2746 Nostrand Avenue, 2751 Nostrand Avenue, 2721 Nostrand Avenue, and 2750 Nostrand Avenue in Kings County that sell new vehicles and used vehicles, and are domestic corporations duly incorporated under the laws of the State of New York with their principal place of business located in Kings County, New York.

8.   Defendant Andrew M. Cuomo (hereinafter "Cuomo" or the "Governor") is and was the Governor of the State of New York and is and was acting under color of State law, and in his official capacity, at all times relevant to the allegations made by the plaintiffs herein. Defendant Cuomo's principal place of business is located at the State Capitol Building, Albany, New York. He is sued in his official capacity.

9.   Defendant Mayor Bill de Blasio (hereinafter "de Blasio" or the "Mayor") is Mayor of the City of New York (hereinafter the "City") and is the final decision-maker in the City concerning enforcement of the challenged executive order and the New York Forward Plan. He is sued in his official capacity.

10. Defendant ESD was and is a business corporation formed and existing under the laws of the State of New York with authority to determine which are "essential services" delegated to it under EO 202.6, one of the Executive Orders complained of herein. As such, it is a person acting under color of state law pursuant to authority delegated by the Governor.

11. Defendant ESD is a business corporation and, as such, is a "person" subject to the provisions of 42 U.S.C. § 1983.

12. Because of the delegation of sovereign authority contained in EO 202.68, Defendant ESD acted under color of state law as contemplated by the provisions of 42 U.S.C. § 1983.

## JURISDICTION AND VENUE

13. This action raises federal questions under the First, Fifth, and Fourteenth Amendments of the United States Constitution and under federal law, 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgments), as well as 42 U.S.C. §§ 1983, 1988, and 1920.

14. This Court has jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has authority to grant the requested injunctive relief under 28 U.S.C. § 1343(3), the requested declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and Plaintiffs' prayer for costs and reasonable attorneys' fees, under 42 U.S.C. § 1988 and 28 U.S.C. § 1920.

15. This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

16. Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391, as all Defendants are residents of the State of New York and a substantial part of the events giving rise to the claims herein arose in this District.

## INTRODUCTION

17. On March 7, 2020, Defendant Cuomo, citing Section 29-a of Article 2-B of the Executive Law, enacted Executive Order 202 (hereinafter "EO 202") declaring a State disaster emergency for the State of New York related to the global pandemic caused by the novel coronavirus (hereinafter "COVID-19").

18. After enacting EO 202, Defendant Cuomo published a series of successive Executive Orders regulating all manners of New York residents' social, political, religious, and economic lives of New York City's 8.3 million residents.

19. Defendants have enforced Executive Orders concerning "social distancing" which were enacted by Defendant Cuomo under the newly created "Social Distancing Protocol" ("SDP"). The Executive Orders severely restricted the freedoms and liberties of New York State residents.

20. Most recently, on October 6, 2020, EO 202.68 was enacted.

21. Pursuant to EO 202.68, non-essential businesses in certain clusters where cases of COVID-19 is purportedly at a level that compromises the State's containment of the virus, have been ordered to completely shut down for a minimum of fourteen (14) days.

22. EO 202.68 unconstitutionally places Plaintiffs in the "red zone," forcing it to close its business and permanently lose customers and potentially employees to neighboring automobile dealerships, despite Plaintiffs having no positive COVID tests out of their hundreds of employees in the past six (6) weeks leading up to the enactment of EO 202.68 and no known COVID cases of customers who have visited the Dealerships throughout the COVID pandemic.

23. Under guidance issued by ESD, an "essential business" under EO 202.68 includes, in relevant part, automotive sales merely "conducted remotely or electronically, with in-person vehicle showing, return, and delivery by appointment only."  See https://esd.ny.gov/ny-cluster-action-initiative-guidance (last accessed October 7, 2020).

24. New York City, once the epicenter of the outbreak, has since begun to reopen its economy and attempt to recover.  Specifically, several months ago, New York City began reopening in a series of "Phases" under the "New York Forward Plan" ("NYFP") for "reopening New York and building back better."

25. Certain activities were deemed permissible by the Defendants, while others were not.

26. Defendants have consistently interpreted and applied Defendant Cuomo's Executive Orders, the SDP, and the NYFP ambiguously and arbitrarily throughout the duration of the pandemic.

27. On June 22, 2020, automobile dealerships began reopening in regions that were in Phase Two of the NYFP, as long as they followed protocols enacted in the SDP and the Interim Guidance For Vehicle Sales, Leases, And Rentals During the COVID-19 Public Health Emergency ("Dealership Guidance"). These protocols included, but were not limited to, limiting capacity of patrons, requiring patrons to wear masks or protective gear ("PPE"), maintaining a social distance of more than six (6) feet apart, whenever applicable, among many other costly and burdensome requirements.

28. Dealerships were mandated to adhere to the rules in Phase Two promulgated by the NYFP in concurrent phases after Phase Two under pain of penalties, fines, and the threat of closure and shut down.

29. However, Defendants have now arbitrarily determined that Plaintiffs' dealerships must be shut down and Plaintiffs may only conduct sales remotely, while other dealerships a mere couple miles away may continue to operate in-person.

30. Defendants have not even provided the public with the data purportedly supporting their decision, providing only a "top 20 ZIP codes" infection rate of 5.5% spread across many counties.

31. Defendants concede that their basis for implementing EO 202.68 is unlawful as it is no different than the proposal by Defendant de Blasio of zip code designations earlier this week, which Defendant Cuomo, during a press conference on October 5, 2020, rejected because it contained "arbitrary lines."

32. Incredibly, less than 24 hours later, Defendant Cuomo contradicted himself and issued EO 202.86 the basis of which is no different than the zip code designations he concluded were arbitrary.

33. Such conclusions and varying applications of the rules are not a sufficient basis to close the Plaintiffs' dealerships to the public as there are significantly less restrictive means to achieving the Defendants' goal of reducing the transmission of COVID-19; indeed, there is no evidence to suggest that Defendants' selective closure of Plaintiffs' dealerships will have any effect whatsoever on the transmission rate of COVID-19.

34. The restrictions on the Dealerships are thus arbitrary, capricious, have no rational basis, constitute a violation of lawful procedure, are violative of the Plaintiffs' constitutional rights under federal and state law, and constitute an abuse of discretion.

35. Based on the foregoing, the arbitrary restrictions violate: (i) the Plaintiffs' rights to equal protection, substantive due process, and procedural due process under the Fourteenth Amendment; (ii) the Commerce Clause of the United States Constitution; (iii) the Contracts Clause of the United States Constitution; (iv) the Ninth and Tenth Amendments to the United States Constitution; (v) New York Executive Law § 29-A; and (vi) the equal protection clause under the Constitution of the State of New York.

36. The arbitrary restrictions fail strict scrutiny as they are not sufficiently narrowly tailored to serve a compelling government interest.

37. Nor are the arbitrary restrictions on these fundamental rights sufficiently narrowly tailored to serve a compelling government interest.

38. Indeed, Defendants previously issued Interim Guidance for Vehicle Sales, Leases, and Rentals During the COVID-19 Public Health Emergency ("Guidelines") such that Plaintiffs may operate the Dealerships in-person without risking transmission of COVID-19.

39. Now, Defendants have effectively decided that some dealerships, such as Plaintiffs, cannot contain the spread by following the Guidelines, while other dealerships merely a couple of miles away can!

40. Plaintiffs thus seek immediate injunctive relief from the restrictions promulgated and enforced by Defendants via a temporary restraining order, followed by a preliminary and permanent injunction and a declaratory judgment that the restrictions against automobile dealerships are unconstitutional and void, both facially and as applied, because they deprive plaintiffs of their constitutional right to equal protection, are arbitrary and capricious, and lack a compelling state interest or even a rational basis narrowly tailored to serve the compelling government interest in containing the spread of COVID-19 to justify those deprivations.

## ALLEGATIONS

41. Adam Rosatti is the General Manager of the Plaintiffs in this action.

42. Early in the COVID-19 pandemic, all dealerships in New York, including Plaintiffs, were forced to reduce their in-person workforce at all work locations: (i) by fifty percent (50%) no later than March 20, 2020 at 8:00 PM pursuant to EO 202.6; (ii) seventy-five percent (75%) no later than March 21, 2020 at 8:00 PM pursuant to EO 202.7; and (iii) one hundred percent (100%) no later than March 22, 2020 at 8:00 PM through April 19, 2020 pursuant to EO 202.8.

43. As the result, Plaintiffs were forced to lay off virtually their entire workforce at that time.

44. Beginning on April 12, 2020, the Defendants required all businesses to provide to any employees who were present in any workplace in New York masks or face coverings at their expense pursuant to EO 202.16.

45. On April 17, 2020, Defendants required the public at large to wear masks in public places pursuant to EO 202.17.

46. The Defendants extended the required workforce reductions to: (i) April 29, 2020 pursuant to EO 202.14; (ii) May 15, 2020 pursuant to EO 202.18; and (iii) May 28, 2020 pursuant to EO 202.31.

47. On May 28, 2020, Defendants gave business operators such as Plaintiffs (once Plaintiffs were permitted to reopen) discretion to ensure compliance with EO 202.17 (which requires the public at large to wear masks in public places), including the discretion to deny admittance to individuals who fail to comply with EO 202.17, or require or compel their removal if any member of the public fails to adhere to same pursuant to EO 202.34.

48. On the same date, Defendants began a phased reopening of what they deemed to be non-essential businesses, beginning with Phase One, which did not include automobile dealerships such as Plaintiffs, so long as they meet criteria based on prescribed public health and safety metrics and operate subject to guidance promulgated by various agencies.

49. The following day, pursuant to EO 202.35, Defendants began a phased reopening of what they deemed to be non-essential businesses, with Phase Two, which includes all businesses involved in Motor Vehicle Sales, Leases, and Rentals (such as the dealerships run by Plaintiffs), so long as they meet criteria based on prescribed public health and safety metrics and operate subject to guidance promulgated by various agencies. However, Plaintiffs' locations in Kings County did not meet the "prescribed public health and safety metrics" at that time.

50. On June 6, 2020, Defendants gave business operators (who were permitted to reopen) the discretion to: (i) require individuals to undergo temperature checks prior to being allowed admittance; and (ii) deny admittance to any individual who refuses to undergo such a temperature check and any individual whose temperature is above that proscribed by Defendants' agencies' guidelines.

51. On June 22, 2020, Defendants determined that Plaintiffs may reopen their businesses to the public subject to compliance with Interim Guidance for Vehicle Sales, Leases, and Rentals During the COVID-19 Public Health Emergency (hereinafter the "Guidelines").

52. The Guidelines provide that: no vehicle sale, lease or rental activity can occur without meeting minimum State standards, as well as applicable federal requirements.

53. Generally speaking, the Guidelines require Plaintiffs to:

- ensure the workforce and customer presence is limited to fifty percent (50%) of the maximum occupancy for a particular area as set forth in the certificate of occupancy, all of whom must maintain six feet of separation from others, and only be permitted entry into a store if they wear an acceptable face covering;

- encourage customers to conduct viewings, test drives, and/or rentals by appointment only;

- prohibit the use of small spaces by more than one individual at a time;

- require the use of masks for test drivers of vehicles requiring more than one person;

- reduce bi-directional foot traffic in common spaces by using tape or signs with arrows in narrow aisles, between vehicles, or spaces, post signs throughout the location as provided by the Department of Health;

- provide clearly designated entrances and separate exits, encourage customers to minimize touching vehicles unless on a test drive;

- limit in-person employee gatherings;

- stagger schedules for employees to observe social distancing;

- reduce interpersonal contact and congregation;

- permit unaccompanied test drives or sit in the seat with the furthest possible distance from test drivers and wear a mask if not permitted to test drive alone;

- facilitate curbside pickup and drop-off where possible;

- encourage transmission of paperwork via electronic means;

- avoid renting or issuing for test drive vehicles with fabric seats where possible or consider using disposable protective covers for such vehicles;

- establish designated areas for pickups and deliveries;

- provide and maintain hand hygiene stations on site, place receptacles around the location for disposal of soiled items, provide appropriate cleaning and disinfection supplies for frequently touched surfaces and encourage employees to use these supplies, conduct regular cleaning and disinfection of the site and more frequent cleaning and disinfection for high risk areas at least after each shift, daily, or more frequently as needed, clean and disinfect every vehicle (interior and exterior) and keys prior to customer pick up or test drive and after customer drops off the vehicle;

- prohibit shared food and beverages among employees; and

- conduct mandatory daily health screening practices and notify the state and local health department immediately upon being informed of any positive COVID-19 test result by a worker at their site.

54. Despite the implementation of and compliance with the foregoing measures, on October 6, 2020, the Defendants issued EO 202.68, which authorizes the State's Department of Health to determine areas in the State that require enhanced public health restrictions based upon cluster-based cases of COVID-19 at a level that allegedly compromises the Defendants' containment of the virus.

55. Based upon the severity of any such "cluster" activity the Department of Health mitigation measures, it established so called "red zones" requiring all non-essential businesses, as determined by Defendant ESD based upon published guidance, to once again obliterate Plaintiffs' entire sales department, including the loss of their customers and the livelihood of their employees.

56. However, automobile dealerships competing with Plaintiffs in "orange zones" and "yellow zones," such as Brooklyn Chrysler Jeep Dodge (which is one building away from being in the "red" zone) merely a mile away from Plaintiffs' dealerships, as well as automobile dealerships outside of these zones, may all operate with a full in-person workforce, while Plaintiffs' dealerships may not operate their sales departments in-person because they are in the "red zone."

57. On October 7, 2020, Defendant ESD published Guidance for Determining Whether a Business Enterprise is Subject to a Workforce Reduction under EO 202.68, Related to New York's Cluster Action Initiative to Address COVID-19 Hotspots (hereinafter the "Cluster Guidance").

58. The Cluster Guidance provides that essential businesses allowed to remain open in any "red zones" include automotive sales *conducted remotely or electronically*, with in-person vehicle showing, return, and delivery by appointment only.

59. Plaintiffs have had no positive COVID cases of their hundreds of employees in the six (6) weeks leading up to the issuance of EO 202.68 and have had no known positive cases of their thousands of customers who have visited Plaintiffs' dealerships throughout the COVID pandemic.

60. Despite their compliance with the various executive orders and related guidelines to prevent positive COVID cases at their dealerships, which have been extremely successful (more so than most companies outside of the "red" zones"), Plaintiffs are now, once again, prohibited from operating their dealerships, while their identically situated competitors are freely able to sell vehicles in person.

61. There is no legitimate basis to prohibit Plaintiffs from continuing to operate their sales department in-person so long as Plaintiffs comply with the Guidelines.

62. Since June 22, 2020, when Plaintiffs were permitted to open, Plaintiffs have complied with the Guidelines.

63. On October 6, 2020, Defendant Cuomo addressed the public in a thirty (30) minute press briefing in which he announced the new "cluster action initiative." See https://www.governor.ny.gov/news/governor-cuomo-announces-new-cluster-action-initiative (last accessed October 7, 2020).

64. During that briefing, Defendant Cuomo proclaimed that: (i) we are seeing clusters across the state in Colleges, Binghamton, Orange, Rockland, Queens, Brooklyn, and Nassau; and (ii) clusters seep into the community, which equals community spread.

65. Later in the press briefing, Defendant Cuomo states that the cluster is drawn by actual case numbers, not ZIP codes or census tract. Further in the briefing, Defendant Cuomo provided the following chart:

| Data | 10/5 |
|------|------|
| Top-20 ZIP Codes in hotspots | 5.5% |
| Statewide positivity | 1.20% |
| Statewide positivity with hotspot ZIP codes oversample | 1.45% |
| Statewide deaths | 9 |
| Statewide hospitalizations | 705 |
| Statewide ICU | 158 |
| Statewide intubations | 72 |

66. However, Defendant Cuomo never provided or made public the case numbers for the area where Plaintiffs' dealerships operate even though he has consistently made case numbers available on a daily basis for the entire State and, from time to time, for certain parts of the State by county.

67. The entire block on Nostrand Avenue where Plaintiffs' dealerships operate have had no positive COVID cases in the past six (6) weeks. Yet, Defendant Cuomo has shut down Plaintiffs' dealerships, and has instilled fear in customers who would otherwise shop for vehicles there.

68. In April 2020, when the same restrictions as EO 202.68 were in place for all New York State dealerships, the total combined revenue for new and used sales and leases of vehicles for Plaintiffs was $10,752,641.00.

69. In July 2020, when Plaintiffs, and all other New York State dealerships were permitted to return to in-person sales, the total combined revenue for new and used sales and leases of vehicles for Plaintiffs was $41,012,643.

70. Thus, the prohibition on in-person sales resulted in a staggering 400% decrease in revenue which threatens the very existence of the Plaintiffs' businesses and puts them at great risk of shutting down permanently, or – barring that – subjecting Plaintiffs' businesses to an immeasurable loss of good will and value which is incapable of being readily quantified.

71. However, EO 202.68 will result in a reduction in revenue significantly more than 400%. This is because, in April 2020, all dealerships in New York State were subjected to the same remote sale restrictions, but EO 202.68 subjects only a select few dealerships that happen to be in the "red zone" to remote sales restrictions.

72. EO 202.68 will also result in layoffs of their employees (once again). But this time, the laid off employees will have employment opportunities at other dealerships outside of the red zone. Moreover, this time, Plaintiffs' laid off employees will not receive the additional $600 in unemployment benefits from the federal government; they will be relegated to receiving a maximum of $504 per week from New York State. Without employees to work for Plaintiffs and customers to purchase vehicles, the dealerships will be forced to close.

73. EO 202.68 will completely devastate and in all likelihood destroy Plaintiffs' dealerships. Between the readily foreseeable significant loss of their customers who will seek to purchase vehicles in person in order to on the spot test drive vehicles offered for sale and many of its employees, Plaintiffs will be unable to survive if EO 202.68 is enforced.

## AS AND FOR A FIRST CAUSE OF ACTION

**Violation of the Fourteenth Amendment to the United States Constitution (Equal Protection) pursuant to 42 U.S.C. § 1983**

74.  Plaintiffs re-allege and incorporate by reference the factual allegations in the preceding paragraphs as if set forth fully herein.

75. When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires at least a rational basis for such disparate treatment, so as to ensure that all persons subject to legislation or governmental regulation are indeed being "treated alike, under like circumstances and conditions." See Engquist v. Ore. Dep't of Agr., 553 U.S. 591, 602 (2008).

76.  As other states are relaxing restrictions on businesses, and while dealerships merely a couple miles away from Plaintiffs are permitted to continue operating in person, Plaintiffs are not due to EO 202.68, and Defendants are thus discriminating against identically situated businesses without any rational basis, in direct violation of Plaintiff's Fourteenth Amendment Equal Protection rights.

77. There is no rational basis for this disparate treatment of Plaintiffs by Defendants as compared to identically situated businesses mere miles away.

78. The actions of Defendants are thus in direct violation of Plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

79. Defendants have less restrictive means of regulating the aforementioned restricted activities for the stated purpose of reducing the rate of community spread of COVID-19, particularly permitting the arbitrarily restricted activities to occur requiring the Plaintiffs to comply with the Guidelines.

80. Since June 22, 2020, when Plaintiffs were permitted to reopen, Plaintiffs have strictly complied with said Guidelines.

81.  The challenged regulations do not serve any compelling or even significant government interest and are not narrowly tailored to achieve any legitimate state purpose.

82. In the absence of declaratory and injunctive relief, Plaintiffs will be and have been irreparably harmed.

83. Plaintiffs have no adequate remedy at law for the violation of their constitutional rights.

**AS AND FOR A SECOND CAUSE OF ACTION**

**Violation of Article I, § 8 to the United States Constitution (Commerce Clause) pursuant to 42 U.S.C. § 1983**

84. Plaintiffs re-allege and incorporate by reference the factual allegations in the preceding paragraphs as if set forth fully herein.

85. The Commerce Clause of the United States Constitution provides that the United States Congress shall have the power "[t]o regulate Commerce with foreign Nations, and among the several States, and with the Indian Tribes." See U.S. Const. art. I, sec. 8, cl. 3.

86. The Supreme Court has interpreted the so called "Dormant Commerce Clause" into this Section of the United State Constitution as a prohibition against states passing legislation that discriminates against, or otherwise excessively burdens, interstate commerce. See, e.g., Kassel v. Consol. Freightways Corp., 450 U.S. 662, 669-70 (1981).

87. By taking the above actions, Defendants have discriminated against, and placed an excessive burden upon Plaintiffs, who engage in interstate commerce, as Defendants have restricted the conduct of business in an effort to combat COVID-19 and promote public safety, but Plaintiffs respectfully submit that EO 202.68 is arbitrary, capricious, has no rational basis to achieve the Defendants' purported objective, and constitutes an abuse of discretion.

88. Accordingly, Plaintiffs seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing the EO 202.68, as any such enforcement would impede Plaintiff's ability to sell to customers which right is protected under the Commerce Clause of the United States Constitution.

89. The challenged regulations do not serve any compelling or even significant government interest and are not narrowly tailored to achieve any legitimate state purpose.

90. In the absence of declaratory and injunctive relief, Plaintiffs will be and have been irreparably harmed.

91. Plaintiffs have no adequate remedy at law for the violation of their constitutional rights.

## AS AND FOR A THIRD CAUSE OF ACTION

**Violation of Article I, § 10 to the United States Constitution (Contracts Clause) pursuant to 42 U.S.C. § 1983**

92. Plaintiffs re-allege and incorporate by reference the factual allegations in the preceding paragraphs as if set forth fully herein.

93. The Contracts Clause of the United States Constitution provides, among other things, that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." See U.S. Const. art. I, sec. 10, cl. 1.

94. The Supreme Court has interpreted the Contracts Clause to prevent the government from interfering with contracts between private parties and has applied this limitation to the individual state governments. See, e.g., U.S. v. Winstar Corp., 518 U.S. 839 (1996) (citing Fletcher v. Peck, 10 U.S. 87 (1810))

95. Defendants' actions have impeded Plaintiffs' ability to perform under legal contracts with customers of Plaintiffs and other third parties with which the Dealerships have contracted.

96. Plaintiffs are dealerships who sell and lease automobiles, which are "essential."

97. Accordingly, Plaintiffs seek a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing EO 202.68 to the extent that any such enforcement would impede Plaintiffs' private contracts with customers and third parties.

98. The challenged regulations do not serve any compelling or even significant government interest and are not narrowly tailored to achieve any legitimate state purpose.

99. In the absence of declaratory and injunctive relief, Plaintiffs will be and have been irreparably harmed.

100. Plaintiffs have no adequate remedy at law for the violation of their constitutional rights.

## AS AND FOR A FOURTH CAUSE OF ACTION

**Violation of the Ninth and Tenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983**

101. Plaintiffs re-allege and incorporate by reference the factual allegations in the preceding paragraphs as if set forth fully herein.

102. The Ninth Amendment to the United States Constitution establishes that the enumeration in the Constitution of specific rights shall not be construed in order to deny or disparage the rights retained by the American people. See U.S. Const. amend. IX.

103. The Tenth Amendment to the United States Constitution establishes that the powers not delegated to the States by the United States Constitution, nor prohibited by the United States Constitution to the States, are reserved to the States respectively, or to the American people. See U.S. Const. amend. X.

104. Defendants issuing and enforcement of EO 202.68 is a violation of Plaintiffs' rights under the Ninth and Tenth Amendments of the United States Constitution.

105.     As a proximate result of Defendants' unconstitutional issuance and enforcement of EO 202.68, Plaintiffs are presently suffering, and will only continue to suffer, a significant deprivation of their liberty and property interests.

106.     Plaintiffs, other than as set forth in this Complaint, have no adequate remedy at law to address the wrongs described herein. The declaratory and injunctive relief sought by Plaintiffs is thus necessary to prevent continued and future harm and injury.

107.     Accordingly, Plaintiffs seeks a permanent injunction preventing Defendants, or other applicable governmental/law enforcement authorities, from enforcing arbitrary restrictions on Plaintiffs in violation of the Ninth and Tenth Amendments to the United States Constitution.

## AS AND FOR A FIFTH CAUSE OF ACTION

### Equal Protection under New York State Law

108.     Plaintiffs re-allege and incorporate by reference the factual allegations in the preceding paragraphs as if set forth fully herein.

109.     Article 1 § 11 of the New York Constitution states that "[n]o person shall be denied the equal protection of the laws of this state or subdivision thereof."

110.     By arbitrarily selecting certain businesses on a map, such as Plaintiffs, who have not had any recent COVID positive tests despite employing hundreds of employees and having thousands of customers walk through their showrooms, and precluding them from operating with an in-person workforce while identically situated businesses merely a couple miles away are permitted to continue operating, the Defendants are treating like businesses differently.

111.     Engaging in such selective enforcement which lacks any rational basis is simply unconstitutional.

112.     According to prior executive orders and guidelines issued by Defendants, Plaintiffs were permitted to operate an in-person workforce.

113.     Permitting some businesses to continue doing so while requiring others not to under pain of enforcement of EO 202.86 is unconstitutional.

114.     EO 202.86 did not provide as pre- or post-deprivation remedy to question what is "essential" or whether Plaintiffs' Dealerships may be safely operated with an in-person workforce subject to the previously guidelines permitting them to do so.

115.     There has not been any positive COVID-19 cases at Plaintiffs' dealerships in six (6) weeks.

116.     Plaintiffs have complied with the guidelines for operating with an in-person workforce.

117.     The unequal, random, arbitrary, and unfair treatment of businesses in EO 202.86 is thus palpably unconstitutional.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court grant the following relief:

A.     A temporary restraining order, followed by a preliminary and final injunction restraining Defendants, and all those acting in concert with them, from enforcing the prohibition of conducting sales with an in-person workforce for dealerships under the NYFP;

B.     In the alternative, compelling defendants to apply to Plaintiffs' businesses no greater limits than they have placed on other businesses under the NYFP, including permitting Dealerships to perform sales with an in-person workforce (at least to some extent) and requiring the Dealership to comply with social distancing measures;

C.      A declaratory judgment that: (i) EO 202.86 is unconstitutional, both individually and taken together, on its face and as applied to Plaintiffs;

D.      An award of costs of this litigation and reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988; and

E.  Such other and further relief as this Honorable Court deems just, equitable, and proper.

Dated: Lake Success, New York
      October 8, 2020

**MILMAN LABUDA LAW GROUP PLLC**

      /s/
Jamie S. Felsen, Esq.
Michael J. Mauro, Esq.
Netanel Newberger, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
michael@mllaborlaw.com
netanel@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiffs*