UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒X

PLAZA MOTORS OF BROOKLYN, INC. d/b/a PLAZA HONDA, PLAZA AUTOMOTIVE, LTD. d/b/a PLAZA KIA, CRYSTAL BAY IMPORTS LTD. d/b/a ACURA OF BROOKLYN, PLAZA OLDSMOBILE, LTD. d/b/a PLAZA TOYOTA, PLAZA HYUNDAI, LTD, d/b/a PLAZA HYUNDAI, AND CRYSTAL MOTORS OF BAYSIDE, LTD d/b/a PLAZA AUTO LEASING,

Case No.: 1:20-cv-4851

                    Plaintiff,

- against -

ANDREW M. CUOMO, Governor of the State of New York, in his official capacity,

BILL DE BLASIO, Mayor of the City of New York, in his official capacity, and

EMPIRE STATE DEVELOPMENT CORPORATION,

                    Defendants.
‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒‒X

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**MILMAN LABUDA LAW GROUP PLLC**
Jamie S. Felsen, Esq.
Michel J. Mauro, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
michael@mllaborlaw.com
netanel@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiffs*

**TABLE OF CONTENTS**

I.      **PRELIMINARY STATEMENT** ....................................Error! Bookmark not defined.

II.     **FACTUAL BACKGROUND** ...................................................................................2

III.    **LEGAL STANDARD** ............................................................................................8

IV.     **ARGUMENT** .........................................................................................................13

      A.  Plaintiffs are Likely to Succeed on Their Claims....................................................13

            i. **Equal Protection Claims** .............................................................................13

                  **a. Selective Enforcement** ...........................................................14

                  **a. Class of One** .........................................................................17

            ii. **Commerce Clause of Article 1, § 8 to the United States Constitution** ........18

            iii. **Contracts Clause of Article 1, § 10 to the United States Constitution** ...........................................................................................19

            iv. **Ninth & Tenth Amendments to the United States Constitution**.................20

            v. **Violations under the Constitution of the State of New York** .......................20

      B.  Plaintiffs Will Suffer Immediate & Irreparable Harm Absent Relief.................20

      C.  The Balance of Equities Tip Decidedly in Favor of Plaintiffs...............................21

      D.  The Public Interest Will Not be Disserved by Granting an Injunction ...............22

V.      **CONCLUSION** .....................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

Abbott Labs. v. Mead Johnson & Co.,
    971 F.2d 6 (7th Cir. 1992) ...................................................................... 10 n. 2

Abdul Wali v. Coughlin,
    754 F.2d 1015 (2d Cir. 1985).................................................................. 9

Able v. United States,
    44 F.3d 128 (2d Cir. 1995)...................................................................... 12

Am. Civil Liberties Union v. Clapper,
    785 F.3d 787 (2d Cir. 2015)..................................................................... 9

Arthur v. Assoc. Musicians of Greater New York,
    278 F. Supp. 400 (S.D.N.Y. 1968) ........................................................ 9

Assoc. of Surrogates & Supreme Court Reporters Within City of New York v. State of New York,
    940 F.2d 766 (2d Cir. 1991)..................................................................... 19

AYDM Associates, LLC v. Town of Pamelia,
    205 F. Supp. 3d 252 (N.D.N.Y. 2016).................................................. 13, 14, 17

Barbes Rest. Inc. v ASRR Suzer 218, LLC,
    140 A.D.3d 430 (1st Dept. 2016).......................................................... 21

Brenntag Int'l Chem., Inc. v. Bank of India,
    175 F.3d 245 (2d Cir. 1999).................................................................... 11

Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc.,
    601 F.2d 48 (2d Cir. 1979)..................................................................... 10

Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.,
    598 F.3d 30 (2d Cir. 2010)........................................... 9, 11, 11 n. 4, 12, 12 n. 5

City of Chanute v. Kansas Gas and Elec. Co.,
    754 F.2d 310 (10th Cir. 1985) ............................................................... 10 n. 3

City of Cleburne v. Cleburne Living Ctr., Inc.,
    473 U.S. 432 (1985).............................................................................. 13

Clubside v. Valentin,
    468 F.3d 144 (2d Cir. 2006).................................................................. 17

DiMartile v. Cuomo,
No. 20-CIV.-859 (GTS) (CFH), 2020 WL 4558711 (N.D.N.Y. Aug. 7, 2020) ......... 11, 21

FTI Consulting, Inc. v. PricewaterhouseCoopers LLP,
8 A.D.3d 145 (1st Dept. 2004) .......................................................................... 21

Gagliardi v. Vill. of Pawling,
18 F.3d 188 (2d Cir. 1994) ................................................................................ 13

Golden Krust Patties, Inc. v. Bullock,
957 F. Supp.2d 186 (E.D.N.Y. 2013) ........................................................... 11 n. 4

Glossip v. Gross,
135 S. Ct. 2726 (2015) ........................................................................................ 9

Hamilton Watch Co. v. Benrus Watch Co.,
206 F.2d 738 (2d Cir. 1953) .............................................................................. 10

Harlen Assocs. v. Inc. Vill. of Mineola,
273 F.3d 494 (2d Cir. 2001) .............................................................................. 13

Hu v. City of New York,
927 F.3d 81 (2d Cir. 2019) ................................................................................ 17

Int'l Bus. Mach. v. Johnson,
629 F. Supp. 2d 321 (S.D.N.Y. 2009) ................................................................ 10

Jolly v. Coughlin,
76 F.3d 468 (2d Cir. 1996) ................................................................................ 20

Ligon v. City of New York,
925 F. Supp. 2d 478 (S.D.N.Y. 2013) .................................................................. 9

Mastrovincenzo v. City of New York,
435 F.3d 78 (2d Cir. 2006) ................................................................................ 12

Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills,
815 F. Supp. 2d 679 (S.D.N.Y. 2011) ................................................................ 14

N. Am. Soccer League, LLC. v. U.S. Soccer Fed'n, Inc.,
883 F.3d 32 (2d Cir. 2018) .................................................................................. 8

New York v. Actavis PLC,
787 F.3d 638 (2d Cir. 2015) .............................................................................. 12

iv

New York ex rel. Schneiderman v. Actavis PLC,
    787 F.3d 638 (2d Cir. 2015)....................................................................... 20

O'Lone v. Estate of Shabazz,
    482 U.S. 342 (1987).................................................................................... 9

Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs.,
    769 F.3d 105 (2d Cir. 2014)....................................................................... 12

Pike v. Bruce Church,
    397 U.S. 137 (1970).................................................................................... 18

R.R. Yardmasters of Am. v. Penn. R.R. Co.,
    224 F.2d 226 (3d Cir. 1955)................................................................. 10 n. 3

Rep. of the Philippines v. Marcos,
    862 F.2d 1355 (9th Cir. 1988) .............................................................. 10 n. 3

Roberts v. Neace,
    958 F.3d 409 (6th Cir. 2020) ..................................................................... 21

Rodriguez ex rel. Rodriguez v. DeBuono,
    175 F.3d 227 (2d Cir. 1999)....................................................................... 20

Rosenstiel v. Rosenstiel,
    278 F. Supp. 794 (S.D.N.Y. 1967) ............................................................. 9

Second on Second Café, Inc. v. Hing Sing Trading, Inc.,
    66 A.D.3d 255 (1st Dept. 2009).................................................................. 21

Semmes Motors, Inc. v. Ford Motor Co.,
    429 F.2d 1197 (2d Cir. 1970)...................................................................... 10

Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.,
    119 F.3d 393 (6th Cir. 1997) ................................................................ 10 n. 3

Smithkline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.,
    No. 99-CIV.-9214, 1999 WL 34981557 (S.D.N.Y. Sept. 13, 1999) ................ 9

Tolchin v. Supreme Court of the State of New Jersey,
    111 F.3d 1099 (1997)................................................................................. 18

Tom Doherty Assocs. v. Saban Entm't,
    60 F.3d 27 (2d Cir. 1995)........................................................................... 12

v

Univ. of Tex. v. Camenisch,
    451 U.S. 390 (1981)........................................................................... 8

Vill. of Willowbrook v. Olech,
    528 U.S. 562 (2000)......................................................................... 17

Waldbaum Inc. v. Fifth Ave. of Long Is. Realty Assoc.,
    85 N.Y.2d 600 (1995)....................................................................... 21

Winter v. Nat. Res. Def. Council, Inc.,
    555 U.S. 7 (2008)...................................................................... 9, 11 n. 4

Wisdom Import Sales Co. v. Labatt Brewing Co.,
    339 F.3d 101 (2d Cir. 2003)............................................................ 11

Zahra v. Town of Southold,
    48 F.3d 674 (2d Cir. 1995)............................................................. 14

**Executive Orders**

Executive Order No. 202.6 (2020).......................................................... 2

Executive Order No. 202.7 (2020).......................................................... 3

Executive Order No. 202.8 (2020).......................................................... 3

Executive Order No. 202.14 (2020)........................................................ 3

Executive Order No. 202.16 (2020)........................................................ 3

Executive Order No. 202.17 (2020)........................................................ 3

Executive Order No. 202.18 (2020)........................................................ 3

Executive Order No. 202.31 (2020)........................................................ 3

Executive Order No. 202.34 (2020)........................................................ 3

Executive Order No. 202.35 (2020)........................................................ 4

Executive Order No. 202.68 (2020).................... 1, 2, 5, 6, 7, 8, 14, 15, 15 n. 7, 16, 17, 18, 19, 20

**Other Sources**

U.S. Const. Art. I, § 10, cl. 1............................................................... 19
Black's Law Dictionary (9th ed. 2009)................................................ 11

## PRELIMINARY STATEMENT

Plaintiffs Plaza Motors of Brooklyn, Inc. d/b/a Plaza Honda, Plaza Automotive, Ltd. d/b/a Plaza Kia, Crystal Bay Imports, Ltd. d/b/a Acura of Brooklyn, Plaza Oldsmobile, Ltd. d/b/a Plaza Toyota, Plaza Hyundai, Ltd, d/b/a Plaza Hyundai, and Crystal Motors of Bayside, Ltd d/b/a Plaza Auto Leasing, (hereinafter the "Plaintiffs" or the "Dealerships") submit this memorandum of law in support of their motion seeking a preliminary injunction enjoining the Defendants from enforcing Executive Order No. ("EO") 202.68, which directs, *inter alia*, that all non-essential businesses, as determined by Defendant Empire State Development Corporation ("ESD"), shall reduce their in-person workforce by 100% in "red zones" based upon the "severity of the 'cluster' activity."

Plaintiffs respectfully submit that EO 202.68 serves as the quintessential law which must be struck down as: (i) arbitrary; (ii) capricious; (iii) constituting an abuse of discretion; (iv) a violation of lawful procedure; and (v) as violative of their constitutional rights under, *inter alia,* the Fourteenth Amendment to equal protection and substantive due process in that there is no rational basis to preclude Plaintiffs from selling and leasing automobiles to customers in person because they are in a so called "red zone" while permitting nearby dealerships in the so called "orange zone" to continue to sell and lease automobiles in person, especially where dealerships in all zones are already required under the law to maintain and enforce social distancing measures, provide masks and enforce mask-wearing policies, and engage in other precautions that are believed to prevent the spread of COVID-19 by the Defendants.

Indeed, the social distancing measures have worked for Plaintiffs, and in the six (6) weeks leading up to the implementation of EO 202.68, none of the several hundred employees of Plaintiffs have tested positive for COVID-19.  Moreover, throughout the COVID-19 pandemic,

upon information and belief, none of Plaintiffs' thousands of customers who have visited Plaintiffs' dealerships have tested positive for COVID-19.

There is no rational basis to conclude that Plaintiffs' dealerships, which are in the "red zone," are more at risk of proliferating the spread of COVID-19 than other dealerships outside the "red zone" such that Plaintiffs must be forced to shut down, permanently lose their employees to other dealerships just mere blocks away outside of the "red zone" who are able to freely operate, lose their customers, and which could be forced into permanent closure or bankruptcy given the uncertainty surrounding the length of time they will be forced to shut as the result of EO 202.68.

Indeed, Plaintiffs, who are still gasping for air after being forced to shut down in March 2020, easily establish that they will suffer irreparable harm if this law stands. Plaintiffs are now being singled out by the Defendants which will likely only serve as a final blow to wipe their already struggling dealerships completely off of the map.

Based on the foregoing, Plaintiffs must be permitted to continue to maintain their entire workforce in-person while continuing their compliance with all guidelines for the safe operation of their dealerships as previously required by the Defendants' executive orders and guidelines.

## FACTUAL BACKGROUND[1]

Plaintiffs are an amalgam of dealerships operating in Brooklyn, New York at 2740 Nostrand Avenue, 2722 Nostrand Avenue, 2700 Nostrand Avenue, 2746 Nostrand Avenue, 2751 Nostrand Avenue, 2721 Nostrand Avenue, and 2750 Nostrand Avenue in Kings County.

Like every dealership in New York, Plaintiffs were forced to reduce their in-person workforce at any work locations:

(i) by fifty percent (50%) no later than March 20, 2020 at 8:00 PM pursuant to EO 202.6;

---

[1] For a full recitation of the facts, Plaintiffs respectfully refer to the Declaration of Adam Rosatti.

2

(ii) seventy-five percent (75%) no later than March 21, 2020 at 8:00 PM per EO 202.7; and (iii) one hundred percent (100%) no later than March 22, 2020 at 8:00 PM through April 19, 2020 pursuant to EO 202.8.  These Executive Orders forced Plaintiffs to lay off virtually their entire workforce at that time.  Beginning on April 12, 2020, the Defendants required all businesses to provide to any employees who were present in any workplace in New York masks or face coverings at their expense pursuant to EO 202.16.  On April 17, 2020, Defendants required the public at large to wear masks in public places pursuant to EO 202.17.

The Defendants extended the required workforce reductions to: (i) April 29, 2020 pursuant to EO 202.14; (ii) May 15, 2020 pursuant to EO 202.18; (iii) May 28, 2020 pursuant to EO 202.31.

On May 28, 2020, Defendants gave business operators such as Plaintiffs (once Plaintiffs were permitted to reopen) discretion to ensure compliance with EO 202.17 (which requires the public at large to wear masks in public places), including the discretion to deny admittance to individuals who fail to comply with EO 202.17, or require or compel their removal if any member of the public fails to adhere to same pursuant to EO 202.34.

On the same date, Defendants began a phased reopening of what they deemed to be non-essential businesses, beginning with Phase One, which did not include automobile dealerships such as Plaintiffs, so long as they meet criteria based on prescribed public health and safety metrics and operate subject to guidance promulgated by various agencies.  See EO 202.34.

The following day, Defendants began a phased reopening of what they deemed to be non-essential businesses, with Phase Two, which includes all businesses involved in Motor Vehicle Sales, Leases, and Rentals (such as the dealerships run by Plaintiffs), so long as they meet criteria based on prescribed public health and safety metrics and operate subject to guidance promulgated

by various agencies.  See EO 202.35.  However, Plaintiffs' locations in Kings County did not meet the "prescribed public health and safety metrics" at that time.

On June 6, 2020, Defendants gave business operators (who were permitted to reopen) the discretion to: (i) require individuals to undergo temperature checks prior to being allowed admittance; and (ii) deny admittance to any individual who refuses to undergo such a temperature check and any individual whose temperature is above that proscribed by Defendants' guidelines.

On June 22, 2020, Defendants determined that Plaintiffs may reopen their businesses to the public subject to compliance with Interim Guidance for Vehicle Sales, Leases, and Rentals During the COVID-19 Public Health Emergency (hereinafter the "Guidelines").

The Guidelines provide that no vehicle sale, lease or rental activity can occur without meeting minimum State standards, as well as applicable federal requirements.

Generally speaking, the Guidelines require Plaintiffs to:

- ensure the workforce and customer presence is limited to fifty percent (50%) of the maximum occupancy for a particular area as set forth in the certificate of occupancy, all of whom must maintain six feet of separation from others, and only be permitted entry into a store if they wear an acceptable face covering;
- encourage customers to conduct viewings, test drives, and/or rentals by appointment only;
- prohibit the use of small spaces by more than one individual at a time;
- require the use of masks for test drivers of vehicles requiring more than one person;
- reduce bi-directional foot traffic in common spaces by using tape or signs with arrows in narrow aisles, between vehicles, or spaces, post signs throughout the location as provided by the Department of Health;
- provide clearly designated entrances and separate exits, encourage customers to minimize touching vehicles unless on a test drive;
- limit in-person employee gatherings;
- stagger schedules for employees to observe social distancing;
- reduce interpersonal contact and congregation;
- permit unaccompanied test drives or sit in the seat with the furthest possible distance from test drivers and wear a mask if not permitted to test drive alone;
- facilitate curbside pickup and drop-off where possible;
- encourage transmission of paperwork via electronic means;

- avoid renting or issuing for test drive vehicles with fabric seats where possible or consider using disposable protective covers for such vehicles;
- establish designated areas for pickups and deliveries;
- provide and maintain hand hygiene stations on site, place receptacles around the location for disposal of soiled items, provide appropriate cleaning and disinfection supplies for frequently touched surfaces and encourage employees to use these supplies, conduct regular cleaning and disinfection of the site and more frequent cleaning and disinfection for high risk areas at least after each shift, daily, or more frequently as needed, clean and disinfect every vehicle (interior and exterior) and keys prior to customer pick up or test drive and after customer drops off the vehicle;
- prohibit shared food and beverages among employees; and
- conduct mandatory daily health screening practices, and notify the state and local health department immediately upon being informed of any positive COVID-19 test result by a worker at their site.

Despite the implementation of and compliance with the foregoing measures, most of which can be considered reasonably related to the public interest of protecting the health and welfare of the public at large, on October 6, 2020, the Defendants issued EO 202.68, which authorizes the State's Department of Health to determine areas in the State that require enhanced public health restrictions based upon cluster-based cases of COVID-19 at a level that allegedly compromises the Defendants' containment of the virus, and that based upon the severity of any such "cluster" activity, the Department of Health mitigation measures in so called "red zones" requiring all non-essential businesses, as determined by Defendant ESD based upon published guidance, to once again obliterate Plaintiffs' entire sales department including the loss of their employees who, unemployed for months merely months ago, now will have the opportunity to immediately return to work for competitors merely a couple miles away from Plaintiffs' Dealerships.  See EO 202.68.

However, competing automobile dealerships in "orange zones" and "yellow zones," some merely a couple miles away from Plaintiffs' dealerships, as well as automobile dealerships outside of these zones, may all operate with a full in-person workforce, while Plaintiffs' dealerships may not operate as they are in the "red zone."

Indeed, on October 7, 2020, Defendant ESD published Guidance for Determining Whether a Business Enterprise is Subject to a Workforce Reduction under EO 202.68, Related to New York's Cluster Action Initiative to Address COVID-19 Hotspots (hereinafter the "Cluster Guidance"). The Cluster Guidance provides that essential businesses allowed to remain open in any "red zones" include automotive sales *conducted remotely or electronically*, with in-person vehicle showing, return, and delivery by appointment only. There is no rational basis to prohibit Plaintiffs from continuing to operate their sales department in-person so long as they comply with the Guidelines.

Plaintiffs have had no positive COVID cases of their hundreds of employees in the six (6) weeks leading up to the issuance of EO 202.68 and have had no known positive cases of their thousands of customers who have visited Plaintiffs' dealerships throughout the COVID pandemic. Despite their compliance with the various executive orders and related guidelines to prevent positive COVID cases at their dealerships, which have been extremely successful (more so than most companies outside of the "red" zones"), Plaintiffs are now, once again, prohibited from operating their dealerships, while their identically situated competitors are freely able to sell vehicles in person.

There is no legitimate basis to prohibit Plaintiffs from continuing to operate their sales department in-person so long as Plaintiffs comply with the Guidelines. Since June 22, 2020, when Plaintiffs were permitted to open, Plaintiffs have complied with the Guidelines.

On October 6, 2020, Defendant Cuomo addressed the public in a thirty (30) minute press briefing in which he announced the new "cluster action initiative." See https://www.governor.ny.gov/news/governor-cuomo-announces-new-cluster-action-initiative (last accessed October 7, 2020).

6

During that briefing, Defendant Cuomo proclaimed that: (i) we are seeing clusters across the state in Colleges, Binghamton, Orange, Rockland, Queens, Brooklyn, and Nassau; and (ii) clusters seep into the community, which equals community spread.   Later in the press briefing, Defendant Cuomo states that the cluster is drawn by actual case numbers, not ZIP codes or census tract.  Further in the briefing, Defendant Cuomo provided the following chart:

| Data | 10/5 |
|---|---|
| Top-20 ZIP Codes in hotspots | 5.5% |
| Statewide positivity | 1.20% |
| Statewide positivity with hotspot ZIP codes oversample | 1.45% |
| Statewide deaths | 9 |
| Statewide hospitalizations | 705 |
| Statewide ICU | 158 |
| Statewide intubations | 72 |

However, Defendant Cuomo never provided or made public the case numbers for the area where Plaintiffs' dealerships operate even though he has consistently made case numbers available on a daily basis for the entire State and, from time to time, for certain parts of the State by county.

The entire block on Nostrand Avenue where Plaintiffs' dealerships operate have had no positive COVID cases in the past six (6) weeks.  Yet, Defendant Cuomo has shut down Plaintiffs' dealerships and has instilled fear in customers who would otherwise shop for vehicles with Plaintiffs' Dealerships, further injuring their dealerships.

In April 2020, when the same restrictions as EO 202.68 were in place for all New York State dealerships, the total combined revenue for new and used sales and leases of vehicles for Plaintiffs was $10,752,641.00.  In July 2020, when Plaintiffs, and all other New York State dealerships were permitted to return to in-person sales, the total combined revenue for new and used sales and leases of vehicles for Plaintiffs was $41,012,643.

Thus, the prohibition on in-person sales resulted in a staggering 400% decrease in revenue which threatens the very existence of the Plaintiffs' businesses and puts them at great risk of

7

shutting down permanently, or – barring that – subjecting Plaintiffs' businesses to an immeasurable loss of good will and value which is incapable of being readily quantified.  However, EO 202.68 will result in a reduction in revenue significantly more than 400%.  This is because, in April 2020, all dealerships in New York State were subjected to the same remote sale restrictions, but EO 202.68 subjects only a select few dealerships that happen to be in the "red zone" to remote sales restrictions.

EO 202.68 will also result in layoffs of their employees (once again).  But this time, the laid off employees will have employment opportunities at other dealerships outside of the red zone. Moreover, this time, Plaintiffs' laid off employees will not receive the additional $600 in unemployment benefits from the federal government; they will be relegated to receiving a maximum of $504 per week from New York State.  Without employees to work for Plaintiffs and customers to purchase vehicles, the dealerships will be forced to close.

EO 202.68 will completely devastate and in all likelihood destroy Plaintiffs' dealerships. Between the readily foreseeable significant loss of their customers who will seek to purchase vehicles in person in order to on the spot test drive vehicles offered for sale, and many of its employees, Plaintiffs will be unable to survive if EO 202.68 is enforced.

## LEGAL STANDARD

"'The purpose of a preliminary injunction is . . . to preserve the relative positions of the parties.'"  See N. Am. Soccer League, LLC. v. U.S. Soccer Fed'n, Inc., 883 F.3d 32, 37-38 (2d Cir. 2018) (quoting Univ. of Tex. v. Camenisch, 451 U.S. 390, 395 (1981)).

Generally, in the Second Circuit, a party seeking a preliminary injunction must establish the following three (3) elements: (1) that there is either (a) a likelihood of success on the merits and a balance of equities tipping in the party's favor or (b) a sufficiently serious question as to the

merits of the case to make it a fair ground for litigation and a balance of hardships tipping decidedly in the party's favor; (2) that the party will likely experience irreparable harm if the preliminary injunction is not issued; and (3) that the public interest would not be disserved by the relief. See Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (reciting standard in part); accord, Glossip v. Gross, 135 S. Ct. 2726, 2736-37 (2015); see also Am. Civil Liberties Union v. Clapper, 785 F.3d 787, 825 (2d Cir. 2015) (reciting standard in part); Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30, 38 (2d Cir. 2010) (holding that "our venerable standard for assessing a movant's probability of success on the merits remains valid [after the Supreme Court's decision in Winter]").

With regard to the first part of the first element, a "likelihood of success" requires a demonstration of a "better than fifty percent" probability of success. See Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985), disapproved on other grounds, O'Lone v. Estate of Shabazz, 482 U.S. 342, 349, n.2 (1987).

"A balance of equities tipping in favor of the party requesting a preliminary injunction" means a balance of the hardships against the benefits. See, e.g., Ligon v. City of New York, 925 F. Supp. 2d 478, 539 (S.D.N.Y. 2013) (characterizing the balancing "hardship imposed on one party" and "benefit to the other" as a "balanc[ing] [of] the equities"); Smithkline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc., No. 99-CIV.-9214, 1999 WL 34981557, at *4-5 (S.D.N.Y. Sept. 13, 1999) (considering the harm to defendant and the "benefit" to consumers in balancing the equities); Arthur v. Assoc. Musicians of Greater New York, 278 F. Supp. 400, 404 (S.D.N.Y. 1968) (characterizing "balancing the equities" as "requiring plaintiffs to show that the benefit to them if an injunction issues will outweigh the harm to other parties"); Rosenstiel v. Rosenstiel, 278 F. Supp. 794, 801-02 (S.D.N.Y. 1967) (explaining that, in order to "balance the

equities," the court "will consider the hardship to the plaintiff . . . , the benefit to [the] plaintiff . . . , and the relative hardship to which a defendant will be subjected") (internal quotation marks omitted).[2]

With regard to the second part of the first element, "[a] sufficiently serious question as to the merits of the case to make it a fair ground for litigation" means a question that is so "substantial, difficult and doubtful" as to require "a more deliberate investigation." See Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 740 (2d Cir. 1953); accord, Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1205-06 (2d Cir. 1970).[3]  "A balance of hardships tipping decidedly toward the party requesting a preliminary injunction" means that, as compared to the hardship suffered by other party if the preliminary injunction is granted, the hardship suffered by the moving party if the preliminary injunction is denied will be so much greater that it may be characterized as a "real hardship," such as being "driven out of business . . . before a trial could be held." See Buffalo Courier-Express, Inc. v. Buffalo Evening News, Inc., 601 F.2d 48, 58 (2d Cir. 1979); Int'l Bus. Mach. v. Johnson, 629 F. Supp. 2d 321, 333-34 (S.D.N.Y. 2009); see also Semmes Motors, Inc., 429 F.2d at 1205 (concluding that the balance of hardships tipped decidedly in favor of the movant where it had demonstrated that, without an injunctive order, it would have been forced out of business as a Ford distributor).[4]

---

[2] See also Abbott Labs. v. Mead Johnson & Co., 971 F.2d 6, 12, n.2 (7th Cir. 1992) ("Weighing the equities as a whole favors X, making preliminary relief appropriate, even though the undiscounted balance of harms favors Y").

[3] See also Six Clinics Holding Corp., II v. Cafcomp Sys., Inc., 119 F.3d 393, 402 (6th Cir. 1997); Rep. of the Philippines v. Marcos, 862 F.2d 1355, 1362 (9th Cir. 1988); City of Chanute v. Kansas Gas and Elec. Co., 754 F.2d 310, 314 (10th Cir. 1985); R.R. Yardmasters of Am. v. Penn. R.R. Co., 224 F.2d 226, 229 (3d Cir. 1955).

[4] It should be noted that, under the Second Circuit's formulation of this standard, the requirement of a balance of hardships tipping decidedly in the movant's favor is added only to the second part

10

With regard to the second element, "irreparable harm" is "certain and imminent harm for which a monetary award does not adequately compensate." See Wisdom Import Sales Co. v. Labatt Brewing Co., 339 F.3d 101, 113 (2d Cir. 2003).

Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." See Brenntag Int'l Chem., Inc. v. Bank of India, 175 F.3d 245, 249 (2d Cir. 1999). With regard to the third element, the "public interest" is defined as "[t]he general welfare of the public that warrants recognition and protection," and/or "[s]omething in which the public as a whole has a stake[,] esp[ecially], an interest that justifies governmental regulation." See DiMartile v. Cuomo, No. 20-CIV.-859 (GTS) (CFH), 2020 WL 4558711, at *7 (N.D.N.Y. Aug. 7, 2020) (citing Public Interest, Black's Law Dictionary (9th ed. 2009)). The Second Circuit recognizes three limited exceptions to the above-stated general standard. See Citigroup Global Markets, Inc., 598 F.3d at 35, n.4.

First, where the moving party seeks to stay government action taken in the public interest pursuant to a statutory or regulatory scheme, the district court should not apply the less rigorous "serious questions" standard but should grant the injunction only if the moving party establishes, along with irreparable injury, a likelihood that he will succeed on the merits of his claim. Id. (citing

---

of the first element (*i.e.*, the existence of a sufficiently serious question as to the merits of the case to make it a fair ground for litigation), and not also to the first part of the first element (*i.e.*, the existence of a likelihood of success on the merits), which (again) requires merely a balance of equities (*i.e.*, hardships and benefits) tipping in the movant's favor. See Citigroup Global Markets, Inc., 598 F.3d at 36 ("Because the moving party must not only show that there are 'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor . . . , its overall burden is no lighter than the one it bears under the 'likelihood of success' standard.") (internal citation omitted); cf. Golden Krust Patties, Inc. v. Bullock, 957 F. Supp.2d 186, 192 (E.D.N.Y. 2013) ("[T]he Winter standard . . . requires the balance of equities to tip in the movant's favor, though not necessarily 'decidedly' so, even where the movant is found likely to succeed on the merits").

Able v. United States, 44 F.3d 128, 131 (2d Cir. 1995)); see also Otoe-Missouria Tribe of Indians v. New York State Dep't of Fin. Servs., 769 F.3d 105, 110 (2d Cir. 2014) ("A plaintiff cannot rely on the 'fair-ground-for-litigation' alternative to challenge governmental action taken in the public interest pursuant to a statutory or regulatory scheme.") (internal quotation marks omitted).

This is because "governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." Able, 44 F.3d at 131.

Second, a heightened standard–requiring both a "clear or substantial" likelihood of success and a "strong" showing of irreparable harm"–is required when the requested injunction (1) would provide the movant with all the relief that is sought and (2) could not be undone by a judgment favorable to non-movant on the merits at trial. See Citigroup Global Markets, Inc., 598 F.3d at 35, n.4 (citing Mastrovincenzo v. City of New York, 435 F.3d 78, 90 (2d Cir. 2006)); New York v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015) ("When either condition is met, the movant must show [both] a 'clear' or 'substantial' likelihood of success on the merits . . . and make a 'strong showing" of irreparable harm' . . . .") (emphasis added).

Third, the above-described heightened standard may also be required when the preliminary injunction is "mandatory" in that it would "alter the *status quo* by commanding some positive act," as opposed to being "prohibitory" by seeking only to maintain the *status quo*. See Citigroup Global Markets, Inc., 598 F.3d at 35, n.4 (citing Tom Doherty Assocs. v. Saban Entm't, 60 F.3d 27, 34 (2d Cir. 1995)).[5]

---

[5] Alternatively, in such a circumstance, the "clear or substantial likelihood of success" requirement may be dispensed with if the movant shows that "extreme or very serious damage will result from a denial of preliminary relief." See Citigroup Global Markets, Inc., 598 F.3d at 35, n.4 (citing Tom Doherty Assocs., 60 F.3d at 34).

<u>**ARGUMENT**</u>

**A.  Plaintiffs are Likely to Succeed on Their Claims**

Plaintiffs respect the authority of the government and its functions.  They complied with Defendants' Executive Orders to date and suffered the terrible impact of the virus, both financial and otherwise, before being permitted to reopen with arduous and costly compliance requirements which Plaintiffs accept as necessary in today's environment.

However, Plaintiffs respectfully submit that there is simply no legitimate basis for Defendants' creation of red, orange, and yellow zones and the placement of Plaintiffs in the "red zone".  As further set forth below, Plaintiffs are likely to succeed on the merits.

i.      **<u>Equal Protection Claims</u>**

The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." <u>See</u> <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985). "[T]he equal protection guarantee ... extends to individuals who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." <u>See</u> <u>Harlen Assocs. v. Inc. Vill. of Mineola</u>, 273 F.3d 494, 499 (2d Cir. 2001). "To state an equal protection claim, a plaintiff must charge a governmental officer 'not only with deliberately interpreting a statute against the plaintiff, but also with singling him out alone for that misinterpretation.'" <u>See</u> <u>Gagliardi v. Vill. of Pawling</u>, 18 F.3d 188, 193 (2d Cir. 1994). Where a plaintiff is not a member of a constitutionally protected class, "he may bring an equal protection claim pursuant to one of two theories: (1) selective enforcement, or (2) 'class of one.'" <u>See</u> <u>AYDM Associates, LLC v. Town of Pamelia</u>, 205 F. Supp. 3d 252, 265 (N.D.N.Y. 2016) (D'Agostino, J.) (citation omitted).

13

Under EO 202.86, there is no question that Defendants deliberately interpret the Executive Order against Plaintiffs.

Here, Plaintiffs are likely to succeed on their claims under both selective enforcement and class-of-one theories.

### a. Selective Enforcement

To succeed under a selective enforcement theory, a plaintiff must establish that (1) he, "compared with others similarly situated, was selectively treated," and (2) "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, ... to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." See Zahra v. Town of Southold, 48 F.3d 674, 683 (2d Cir. 1995) (citation omitted).

A plaintiff must identify comparators that "'a reasonably prudent person would think were roughly equivalent'" to the plaintiff, though the plaintiff does not need to show an "exact correlation" between them and that similarly situated person. See AYDM Associates, 205 F. Supp. 3d at 265 (quoting Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011)).

EO 202.86 selectively treated Plaintiffs as compared to Plaintiffs' competitors just mere miles away in "orange" or "yellow" zones, or completely outside these zones, who are permitted to operate their sales departments in person according to the Guidance while Plaintiffs are precluded from operating the sales departments in person, and for all intents and purposes, will be unable to operate their sales departments .

Indeed, none of the information made available by Defendants explains the rationale behind the establishment.

Though Defendants' website provides that the State developed a science-based approach to contain "these clusters" and stop any further spread of the virus, including new rules and restrictions directly targeted to areas with the highest concentration of COVID cases and the surrounding communities,[6] Defendants have not provided the public with the numbers supporting their decision, including any information related to the number of positive COVID cases on the section of Nostrand Avenue where Plaintiffs' dealerships are located.  This is likely because, upon information and belief, the number of positive COVID cases on the section of Nostrand Avenue where Plaintiffs' dealerships are located does not warrant it being in the "red" zone.

Indeed, Plaintiffs' dealerships have had no positive COVID cases of its employees in the six (6) weeks leading up to the issuance of EO 202.86[7] and there are no known positive cases of the thousands of customers who have visited Plaintiffs' dealerships throughout the COVID pandemic.[8]

Virtually all of Brooklyn is designated yellow, which is a "precautionary zone" yet nothing precludes an individual from traveling down the block into an orange or red zone. Moreover, at present, there is no lawful basis for suggesting that the public's health or safety is furthered by shuttering automobile dealerships in a "red zone" while automobile dealerships located several blocks away in an orange or yellow zone remain open.

---

[6] See https://esd.ny.gov/ny-cluster-action-initiative-guidance (last accessed October 7, 2020).

[7] EO 202.86 was purportedly implemented based on the very recent (*i.e.*, the past few weeks), increased COVID positive cases.

[8] It is respectfully submitted that, through the contact tracing being performed by New York, Plaintiffs would have been informed about any customers who tested positive for COVID after visiting Plaintiffs' dealerships.

Defendants concede that their cluster initiative is unlawful as the cluster initiative issued by Defendant Cuomo is no different than the proposal by Defendant de Blasio of zip code designations earlier this week, which Defendant Cuomo, during a press conference on October 5, 2020, rejected because it contained "arbitrary lines." Incredibly, less than 24 hours later, Defendant Cuomo contradicted himself and issued the arbitrary cluster initiative contained in EO 202.86 which is no different than the zip code designations.

On October 6, 2020, Defendant Cuomo addressed the public in a thirty (30) minute press briefing[9] in which he announced the new "cluster action initiative." During that briefing, Defendant Cuomo proclaimed that: (i) we are seeing clusters across the state in Colleges, Binghamton, Orange, Rockland, Queens, Brooklyn, and Nassau; and (ii) clusters seep into the community, which equals community spread. Later in the press briefing, Defendant Cuomo states that the cluster is drawn by actual case numbers, not ZIP codes or census tract.

Further in the briefing, Defendant Cuomo provided the following chart:

| Data | 10/5 |
|---|---|
| Top-20 ZIP Codes in hotspots | 5.5% |
| Statewide positivity | 1.20% |
| Statewide positivity with hotspot ZIP codes oversample | 1.45% |
| Statewide deaths | 9 |
| Statewide hospitalizations | 705 |
| Statewide ICU | 158 |
| Statewide intubations | 72 |

However, Defendant Cuomo never provided or made public the case numbers that provide that the Brooklyn area where Plaintiffs' dealerships operate have additional cases.

This is despite the fact that Defendant Cuomo has consistently made case numbers available on a daily basis for the entire State and, from time to time, for certain parts of the State

---

[9]   See   https://www.governor.ny.gov/news/governor-cuomo-announces-new-cluster-action-initiative (last accessed October 7, 2020).

by county.  In that regard, Defendant Cuomo's measly provision of a "top-20 ZIP code" infection rate is not availing and cannot serve as a rational basis for enforcing EO 202.86 against Plaintiffs. Based on the foregoing, Defendants have evinced an intent to discriminate on the basis of impermissible considerations.

Dealerships in "orange" or "yellow" zones, or those outside of the zones, who are a mere couple miles away from Plaintiffs' dealerships, will not be subject to Defendants' enforcement while Plaintiffs' dealerships will, and the Defendants have not even provided the public with any data supporting the factual basis for their creation of the zones.

As such, Plaintiffs will succeed on a selective enforcement theory.

### b. Class of One

To succeed under a class-of-one theory, a plaintiff must establish that he was "intentionally treated differently from others similarly situated and 'there is no rational basis for the difference in treatment.'" See AYDM Associates, 205 F. Supp. 3d at 265 (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). A class-of-one plaintiff "must show an extremely high degree of similarity between themselves and the persons [with] whom they compare themselves." See Clubside v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006). A plaintiff is not required to prove "a defendant's subjective ill-will towards a plaintiff," and can prevail on a class-of-one claim based on similarity alone. See Hu v. City of New York, 927 F.3d 81, 93 (2d Cir. 2019).

Plaintiffs respectfully submit that there is no rational basis for the difference in forbidding Plaintiffs from operating their dealerships with an in-person sales workforce while permitting all dealerships outside the "red" zone to operate at full force.  Indeed, the only difference between Plaintiffs and the similarly situated dealerships is their location; they otherwise were previously permitted to operate equally until Defendants' arbitrary Executive Order.

17

No rational person could regard Plaintiffs' circumstance of being located in a so called "red zone" to differ from a competing dealership outside of any such "red zone," especially when all dealerships are required to comply with the Guidelines which sufficiently and rationally address the dangers of COVID-19 transmission.  Indeed, there is no basis whatsoever for the notion that operating Plaintiffs' dealerships in the so called "red zone" whilst complying with the Guidelines creates any greater risk than operating any dealership outside of any such "red zone" that complies with the Guidelines.

Based on the foregoing, the similarity in circumstances between dealerships in and outside of the "red zone" and their difference in treatment based on Defendants' enforcement of EO 202.68 can be no mistake.

Accordingly, Plaintiffs will succeed on a class-of-one theory.

### ii.     Commerce Clause of Article 1, § 8 to the United States Constitution

A law violates the dormant Commerce Clause if "the burden imposed on [interstate] commerce is clearly excessive in relation to the putative local benefits." See Pike v. Bruce Church, 397 U.S. 137, 142 (1970); see also Tolchin v. Supreme Court of the State of New Jersey, 111 F.3d 1099, 1108 (1997).

Here, Plaintiffs can easily establish that the purported putative local benefit to the Defendants' promulgation of EO 202.68 does not outweigh the massive burden imposed on interstate commerce by refusing to permit Plaintiffs' dealerships from conducting sales in-person rather than only remotely.

First, Defendant Cuomo has stated numerous times that the States of New York, New Jersey, and Connecticut must unite to the extent possible in making rules to prevent the

transmission of COVID-19 because, without same, citizens will simply travel to nearby states in order to do activities they are forbidden from doing in their home state.

Now, in an apparent about-face, Defendants have thrown that wisdom to the wind in localizing selective enforcement of certain neighborhoods of certain counties based on unpublished and otherwise hidden data and arbitrarily crayoned lines on a map.

Further, Defendants' institution of EO 202.68 burdens interstate commerce because individuals are likely to visit dealerships mere miles away to physically see a vehicle in person on the same day they want to make a purchase rather than be relegated to conducting a sale remotely.

Accordingly, Plaintiffs are likely to succeed on their claim that EO 202.68 as applied violates the Commerce Clause of the United States Constitution.

### iii.    Contracts Clause of Article I, § 10 to the United States Constitution

The Contracts Clause provides that "[n]o State shall ... pass any ... Law impairing the Obligation of Contracts." See U.S. Const. Art. I, § 10, cl. 1.

Here, EO 202.68 impairs the ability of Plaintiffs to enter into contracts with customers in order to purchase or lease vehicles because no customers will conduct sales remotely if a dealership merely a couple miles away can allow them to test drive a vehicle and negotiate the price in person at the same time.  Further, EO 202.68 does not constitute a "reasonable means to a legitimate public purpose" because less restrictive means are available to achieve the Defendants' purported objective of preventing the transmission of COVID-19 by permitting Plaintiffs' dealerships to continue operating with an in-person workforce pursuant to the guidelines, which the Defendants have deemed to be sufficient to achieve that objective.  See Assoc. of Surrogates & Supreme Court Reporters Within City of New York v. State of New York, 940 F.2d 766, 771 (2d Cir. 1991) (internal quotation marks and citations omitted).

19

Accordingly, Plaintiffs are likely to succeed on their claim that EO 202.68 as applied violates the Contracts Clause of the United States Constitution.

### iv.    Ninth & Tenth Amendments to the United States Constitution

Plaintiffs are likely to succeed on the merits under this cause of action for the same reasons set forth above.

### v.    Violations under the Constitution of the State of New York

Plaintiffs are likely to succeed on the merits under this cause of action for the same reasons set forth above.

### B.    Plaintiffs Will Suffer Immediate & Irreparable Harm Absent Relief

"Irreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." See New York ex rel. Schneiderman v. Actavis PLC, 787 F.3d 638, 660 (2d Cir. 2015). The showing of irreparable harm "is the single most important prerequisite for the issuance of a preliminary injunction." See Rodriguez ex rel. Rodriguez v. DeBuono, 175 F.3d 227, 233-34 (2d Cir. 1999). The Court can presume irreparable injury where it is alleged that a constitutional right has been violated. See Jolly v. Coughlin, 76 F.3d 468, 482 (2d Cir. 1996) (finding that the district court's presumption of irreparable harm based on a showing of substantial likelihood of success on the merits on an Eighth Amendment claim was appropriate because "it is the alleged violation of a constitutional right that triggers a finding of irreparable harm").

Plaintiffs easily satisfy the requirement of a showing of irreparable harm because they allege a violation of their constitutional rights under the Fourteenth Amendment.  Moreover, should an injunction not issue, there is a substantial likelihood that employees will be permanently lost and that Plaintiffs' dealerships, themselves, may be forced to permanently close or file for

bankruptcy, both of which also constitute irreparable harm. See Barbes Rest. Inc. v ASRR Suzer 218, LLC, 140 A.D.3d 430, 432 (1st Dept. 2016) ("If a preliminary injunction is not granted, plaintiff's restaurant, situated at a prime retail location, will be closed, its 19 employees will lose their jobs, and plaintiff will lose its substantial investment in improvements") (citing Waldbaum Inc. v. Fifth Ave. of Long Is. Realty Assoc., 85 N.Y.2d 600, 607 (1995) (forfeiture of "valuable improvements" and the good will built up by the plaintiff at the store location warranted a preliminary injunction); Second on Second Café, Inc. v. Hing Sing Trading, Inc., 66 A.D.3d 255, 272–273 (1st Dept. 2009) ("the loss of the goodwill of a viable ongoing business" constitutes "irreparable harm warranting the grant of preliminary injunctive relief"); FTI Consulting, Inc. v. PricewaterhouseCoopers LLP, 8 A.D.3d 145, 146 (1st Dept. 2004) (loss of goodwill constitutes irreparable harm because it is not "readily quantifiable")).

Similarly, based on the significant decrease in Plaintiffs' revenues when being forced to conduct sales remotely, Plaintiffs will be unable to sustain themselves at such greatly reduced revenues and will be forced to shut down.

Accordingly, Plaintiffs satisfy the requirement of irreparable harm.

**C.  The Balance of Equities Tip Decidedly in Favor of Plaintiffs**

The likelihood that Plaintiffs will succeed on their equal protection claim means that the public interest would be served by protecting their constitutional rights. See DiMartile, 2020 WL 4558711, at *11 (citing Roberts v. Neace, 958 F.3d 409, 416 (6th Cir. 2020) ("[T]reatment of similarly situated entities in comparable ways serves public health interest at the same time it preserves bedrock free-exercise guarantees")).   Additionally, because complying with the Guidelines has already been deemed sufficient to mitigate the spread of COVID-19 in a dealership,

Plaintiffs respectfully submit that applying those same restrictions to their dealerships would not harm the Defendants' interests.

### D.  The Public Interest Will Not be Disserved by Granting an Injunction

The rationale behind Defendants' unreasonable Executive Order is to prevent the transmission of the COVID-19 virus.  However, less restrictive means are available to achieve this objective by instead enforcing Plaintiffs' compliance with the Guidelines such that they may continue to maintain their entire in-person workforce, or at least allow them to employ part of their sales staff in-person.  Indeed, the public interest will be served by taking this less stringent action. The public interest will also be served by granting the requested relief because the public at large would be permitted to purchase or lease vehicles from Plaintiffs, which are essential commodities.

### CONCLUSION

For the reasons set forth herein, as well as those set forth in the Plaintiffs' complaint and supporting declaration, Plaintiffs respectfully request that this Court issue an Order granting Plaintiffs a preliminary injunction enjoining Defendants from enforcing EO 202.68 that requires Plaintiffs to reduce their in-person workforce by 100% in so called "red zones."

Dated: Lake Success, New York
        October 8, 2020

**MILMAN LABUDA LAW GROUP PLLC**
_____/s/_____  _____
Jamie S. Felsen, Esq.
Michael J. Mauro, Esq.
Netanel Newberger, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY  11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
michael@mllaborlaw.com
netanel@mllaborlaw.com
emanuel@mllaborlaw.com
_Attorneys for Plaintiff_