UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------X

PLAZA MOTORS OF BROOKLYN, INC. d/b/a PLAZA HONDA, PLAZA AUTOMOTIVE, LTD. d/b/a PLAZA KIA, CRYSTAL BAY IMPORTS LTD. d/b/a ACURA OF BROOKLYN, PLAZA OLDSMOBILE, LTD. d/b/a PLAZA TOYOTA, PLAZA HYUNDAI, LTD, d/b/a PLAZA HYUNDAI, AND CRYSTAL MOTORS OF BAYSIDE, LTD d/b/a PLAZA AUTO LEASING,

      Plaintiff,

- against -

**ANDREW M. CUOMO,** Governor of the State of New York, in his official capacity,

**BILL DE BLASIO,** Mayor of the City of New York, in his official capacity, and

**EMPIRE STATE DEVELOPMENT CORPORATION,**

      Defendants.
------------------------------X

**Case No.:** 1:20-cv-4851 (WFK) (SJB)

Date of Service: October 21, 2020

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

**MILMAN LABUDA LAW GROUP PLLC**
Jamie S. Felsen, Esq.
Michael J. Mauro, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY  11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
michael@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiffs*

## **PRELIMINARY STATEMENT**

Plaintiffs submit this reply memorandum of law in further support of their motion seeking a preliminary injunction enjoining the Defendants from enforcing Executive Order No. ("EO") 202.68.  The government argues that it is vital they be allowed to "*do everything possible* to stop any [COVID-19] case increases" and effectively waves a magic wand while incanting unspecified "science" and "data" to support their request to eat away at Plaintiffs' constitutional rights *carte blanche*.  However, Defendants do not provide the very data that they allege they relied upon in making their decision to create the "red zones."  Further, Dr. Varma admits in his declaration that it is impossible to determine the reproduction rate of the "red zones" due to their small size.  The lack of data supporting the government's cluster action initiative – data the government claims is available to them in making their decisions, yet is unavailable in this litigation – underscores Plaintiffs' argument that there is no rational basis for the enforcement of EO 202.68.

Defendants' arguments are further belied by the fact that, since June 2020, Plaintiffs have operated under severely restrictive measures (with which they have no qualms because those measures are rationally related to prevent the spread of COVID-19 and are equally applied to all automobile dealerships), and there is no data or evidence to suggest that permitting Plaintiffs to operate sales subject to the Guidelines creates or imposes a greater risk of the transmission of COVID-19; there simply isn't any.  Indeed, even if the numbers of positive cases do support the need and implementation of a "red zone" (which Defendants have failed to establish with any of the evidence supposedly available to them), there is no rational relationship between forcing Plaintiffs to eviscerate their in-person sales operations and preventing the spread of COVID-19 because the measures undertaken by Plaintiffs pursuant to the Guidelines are already sufficiently narrowly tailored to prevent the spread of COVID-19.

The Defendants cite to the Department of Health's website, which records fatalities by county, in an effort to justify their promulgation of EO 202.68; however, this metric does not support why Plaintiffs' specific stores on one (1) entire block on Nostrand Avenue warrants being shut down while dealerships a couple of miles away are permitted to continue conducting in-person sales. Indeed, Defendant Cuomo himself repeatedly stated that a lack of unity among *states* – not neighborhoods within states – will only lead to individuals traveling to other states which are less restrictive. Apparently, this reasoning (which had previously been utilized to establish unity amongst states of the tri-state area in keeping restrictions in place) has been abandoned and discarded in favor of the selective and arbitrary redlining of maps without providing the public (or this Court) the "data-driven" information and guidance from public health experts upon which Defendants purportedly rely to support their decision to promulgate EO 202.68.

EO 202.68 does not prevent residents in the red zone from traveling to a dealership (or any business or place of employment) outside of the red zone to shop for a vehicle. Indeed, it forces them to leave the red zone to shop. Therefore, not only does EO 202.68 fail to achieve the goal of preventing the spread of COVID-19, it exacerbates the problem because those individuals will certainly leave the red zone and potentially transmit COVID-19 to others outside of the red zone.

Moreover, although EO 202.68 was enacted for a fourteen (14) day period, today, during a press conference, Defendant Cuomo announced that the restrictions in Brooklyn's "red zone" will continue. Defendants, in opposing Plaintiffs' requested relief, rely on many recent decisions in cases brought by various religious institutions who were denied the same relief sought here. However, Plaintiffs' sales operations do not suffer from the same risks of COVID-19 transmission as these religious institutions. Thus, Defendants' reliance on Chief Justice Roberts opinion in South Bay United Pentecostal Church is misplaced.

2

Plaintiffs do not operate a church in which many together as one enter, gather, pray, sing, and leave all at the same time. Rather, automobile purchasers come and go at various times throughout the day and meet one on one with one (1) salesperson in an area away from others, creating virtually no risk of transmission. And, separate and apart from the normal sales process, Plaintiffs are required to comply with restrictive guidelines promulgated by the Defendants which sufficiently has contained the spread of COVID-19 at Plaintiffs' dealerships.

To the extent that Defendants can establish that automobile dealerships will reduce the spread of COVID-19 by requiring remote sales, the Constitution requires that such a measure be applied equally to all automobile dealerships, especially where, as here, no scientific data has been provided supporting the application of EO 202.68 to Plaintiffs.

For these reasons, as well as those set forth further below, Plaintiffs are entitled to the relief requested here as, even under the Jacobson standard (which should not apply in this case as set forth below), Defendants fail to establish any real or substantial relation between the restrictions imposed upon Plaintiffs and preventing the transmission of COVID-19. As such, Plaintiffs must be permitted to continue to maintain their entire sales workforce in-person while continuing their compliance with all guidelines for the safe operation of their dealerships as required by the Defendants' other executive orders and guidelines. Anything less will result in the plain and palpable invasion of rights secured by the United States Constitution.

## **LEGAL STANDARD**

Federal courts have developed a regimen of tiered scrutiny for examining most constitutional issues; generally, they are: (i) rational basis scrutiny; (ii) intermediate scrutiny; and (iii) strict scrutiny. See Russell W. Galloway, Means-End Scrutiny in American Constitutional Law, 21 Loy. L.A. L. Rev. 449, 451-56 (1988).

Defendants argue they have broad authority under state police powers in reacting to emergency situations relating to public health and safety and argue the traditional standards of constitutional scrutiny should not apply, but rather, that a more deferential standard as articulated in Jacobson v. Massachusetts, 197 U.S. 11, 31 (1905), should be used. Defendants argue that Jacobson sets forth a standard that grants almost extraordinary deference to their actions in responding to a health crisis and that, based on that deference, Plaintiffs' claims are doomed to fail. In Jacobson, although the Court unquestionably afforded a substantial level of deference to the discretion of state and local officials in matters of public health, it did not hold that deference is limitless. Rather, it closed its opinion with a *caveat* to the contrary:

> Before closing this opinion we deem it appropriate, in order to prevent misapprehension [of] our views, to observe—perhaps to repeat a thought already sufficiently expressed, namely—that **the police power of a state**, whether exercised directly by the legislature, or by a local body acting under its authority, may be exerted in such circumstances, or by regulations **so arbitrary and oppressive** in particular cases, as to **justify the interference of the courts to prevent wrong and oppression**.

Id. at 38 (emphasis added). There is no question, therefore, that even under the plain language of Jacobson (which should not apply here), a public health measure may violate the Constitution. Jacobson was decided over a century ago. Since that time, there has been substantial development of federal constitutional law in the area of civil liberties, including the development of tiered levels of scrutiny for constitutional claims, which did not exist when Jacobson was decided.

While Jacobson has been cited by some modern courts as ongoing support for a broad, hands-off deference to state authorities in matters of health and safety, other courts and commentators have questioned whether it remains instructive in light of the intervening jurisprudential developments. As recently explained in Bayley's Campground, Inc. v. Mills, 2020 WL 2791797, at *8 (D. Me. May 29, 2020):

4

> [T]he permissive Jacobson rule floats about in the air as a rubber stamp for all but the most absurd and egregious restrictions on constitutional liberties, free from the inconvenience of meaningful judicial review. This may help explain why the Supreme Court established the traditional tiers of scrutiny in the course of the 100 years since Jacobson was decided.

The extraordinarily deferential standard based on Jacobson is not appropriate. The Court should thus apply "regular" constitutional scrutiny to the issues in this case for two (2) reasons: (i) first, the ongoing and open-ended nature of the restrictions; and (ii) the need for an independent judiciary to serve as a check on the exercise of emergency government power. See, e.g., County of Butler v. Wolf, 2020 WL 5510690, at *22 (W.D.Pa. Sept. 14. 2020).

Using the normal levels of constitutional scrutiny in emergency circumstances does not prevent governments from taking extraordinary actions to face extraordinary situations. Indeed, an element of each level of scrutiny is assessing and weighing the purpose and circumstances of the government's act. The application of normal scrutiny will only require the government to respect the fact that the Constitution applies even in times of emergency. As the Supreme Court has observed: "[t]he Constitution was adopted in a period of grave emergency. Its grants of power to the federal government and its limitations of the power of the States were determined in the light of emergency, and they are not altered by emergency." See Home Building & Loan Ass'n. v. Blaisdell, 290 U.S. 398, 425 (1934). Ordinary constitutional scrutiny should thus be applied.

### ARGUMENT

**A. Plaintiffs are Likely to Succeed on Their Claims**

The restrictions in play here under EO 202.68 are arbitrary, at worst, and indefinitely vague at best. In defending EO 202.68, the government seeks to confuse with a deluge of unnecessary and undisputed information rather than convince with the actual raw data purportedly supporting the "red zones."

5

Throughout their papers, Defendants go on *ad nauseum* that their decisions are supported by data and by the opinions of widely unnamed preeminent experts in public health. However, the actual data that the government supposedly relies upon in concluding that the creation of "red zones" is necessary is glaringly missing from their submissions. Instead, Defendants each provide infection rates (by percentage) of Midwood Brooklyn (the neighborhood bordering the block where Plaintiffs' dealerships are located) without the data supporting those percentages. Even the most deferential standard of constitutional review does not permit enforcement of EO 202.68 based on these unsupported figures. Indeed, while Defendant de Blasio sought to implement a zip code-based approach to address the so-called clusters (the data for which is missing), Defendant Cuomo rejected this approach as arbitrary. Yet, because there is no apparent logic to where these lines are drawn, Defendants effectively implemented this approach that he previously rejected as arbitrary.

    i. **Equal Protection Claims**

Plaintiffs are likely to succeed under both theories of their equal protection claims.

    **a. Selective Enforcement**

Plaintiffs were selectively treated based on their location within the Orthodox community that Defendant Cuomo specifically targeted in addressing the public when implementing EO 202.68. Defendants did so without any scientific basis or explanation given related to the actual data supporting Defendants' decisions. Indeed, when challenged here and in other cases, Defendants merely mustered to provide unsupported and conclusory percentages without the underlying figures, i.e., dates of and total number of individuals tested in the red zone and total positive number within the red zone, dates of and total number of individuals tested on the block where Plaintiffs' dealerships are located and the total positive number, *as compared to* other areas to indicate whether areas outside the red zones actually have a lower infection rate.

Defendants have proffered no evidence whatsoever to rebut Plaintiffs' averment that they have had no COVID-19 positive cases in the six (6) weeks preceding the implementation of EO 202.68. Instead, they sidestep this argument with a red herring; Defendants argue that they cannot look at the data so granularly – despite Defendant Cuomo today, during his press conference, stating that New York has the ability to gather data block by block – ignoring all along that they have not provided the actual data for the red zone in Brooklyn itself. Indeed, Defendants' failure to look at the data so granularly further supports Governor Cuomo's objective in implementing EO 202.68 to shut down the Orthodox community. Further, there is no factual basis to support the notion that EO 202.68 will prevent the spread of COVID-19; in fact, **critically, according to Defendants' declarations in opposition, the percentage of COVID-19 cases were decreasing before the challenged executive order was implemented**. See Zucker Decl., Docket Entry 22, at ¶ 49 (explaining that the rate decreased from 7.67% the week of September 20 through September 26 to 6.69% the week of September 27 through October 3, and then to 5.86% the week of October 4 through October 10, which was effectively prior to EO 202.68).[1]

Thus, there was no rational basis to implement EO202.68.

Contrary to Defendants' argument, Plaintiffs are not obligated to show a better-treated, similarly-situated group of individuals in order to establish a claim of lack of equal protection, so long as they allege that a facially-neutral law has been applied in an intentionally-discriminatory manner. See Alfaro v. Labador, 300 Fed. Appx. 85, 87 (2d Cir. 2008).

Here, Plaintiffs allege that EO 202.68 has been applied in an intentionally-discriminatory manner, and that there is no rational basis for the disparate treatment of Plaintiffs as compared to identically situated businesses outside the red zone.

---

[1] By its express terms, enforcement of EO202.68 was not required until October 9, 2020.

Yesterday (as CBS News reported)[2], and today, during a press conference[3], Defendant Cuomo made a statement that belies the basis for EO 202.68. Indeed, Defendant Cuomo stated that, while New Jersey, Connecticut, and Pennsylvania qualify for New York's mandatory quarantine list due to their increased positive COVID cases, which would require those travelling into New York from those states to quarantine for fourteen (14) days, because "we're also fighting to open up the economy," it would be "devastating to the economy", New Jersey, Connecticut, and Pennsylvania will not be included on the mandatory quarantine list. See https://www.youtube.com/watch?v=EFHUvtFY7fY&feature=emb_title (last accessed October 21, 2020). Defendant Cuomo is quoted as stating "You have people coming in for work. You have people going back and forth for work. You have trucks coming in that are bringing in basic staples all day long, so it would be highly problematic." Indeed, in a joint statement from Defendant Cuomo and the Governors of New Jersey and Connecticut, states, in relevant part:

> Our states have worked together successfully in combating this pandemic since the beginning and we'll continue to do so. **The travel advisory was designed to keep our respective states safe, with the understanding that we are a connected region, dependent on each other when it comes to commerce, education, and health care.** …

The foregoing logic and wisdom escaped the Defendants in creating EO 202.68 and confirms that there is no rational basis for creating EO 202.68. It was created merely to shut down the Orthodox community in which Plaintiffs' dealerships happen to be located.

---

[2] See https://newyork.cbslocal.com/2020/10/20/tri-state-area-travel-advisory-coronavirus-covid-19-new-jersey-connecticut-new-york/ (last accessed October 21, 2020).

[3] See https://www.youtube.com/watch?v=EFHUvtFY7fY&feature=emb_title (last accessed October 21, 2020).

Accordingly, Plaintiffs demonstrate a likelihood of success on the merits of their selective enforcement equal protection claim.

### b. Class of One

Similarly, there is no rational basis for forbidding Plaintiffs from operating with an in-person sales workforce while permitting all dealerships outside the red zone to operate at full force where their only difference is location. All dealerships are required to comply with the Guidelines, and EO 202.68 thus intentionally treats Plaintiffs differently from other dealerships similarly situated without any rational basis for the difference in treatment.

Again, there is no scientific evidence that Plaintiffs' in-person sales operations pose a greater risk than other dealerships doing so. Moreover, individuals residing in red zones who wish to avoid the necessity of making an appointment to purchase a vehicle as required by EO 202.68 (and all other restrictions that residents of red zones face through EO 202.68) will simply travel outside the red zone to purchase vehicles and perform all other shopping, which will only further exacerbate the transmission of COVID-19.

Critically, dealerships are not susceptible to the issues facing religious institutions. There are never mass gatherings at dealerships, and certainly cannot be based on the guidelines. Most sales are conducted merely between two (2) people at a time, and dealerships are large enough to accommodate several two (2) person meetings while maintaining social distancing as already required by the Guidelines.

There is simply no evidence to support that the Guidelines are not already narrowly tailored to achieve the government's interest in securing the public's health. There is similarly no evidence to support that forcing Plaintiffs to operate remotely will achieve that compelling state interest.

### ii. <u>Commerce Clause of Article 1, § 8 to the United States Constitution</u>

Defendants argue that EO 202.68 in no way affects interstate commerce, urging instead that it only affects intrastate commerce.

However, by their very own admission, Defendants seek to have individuals from outside the red zone – including those from out of the state (such as New Jersey) – from traveling into the red zone to purchase a car from Plaintiffs.

Thus, EO 202.68 unquestionably implicates and burdens interstate commerce.

### iii. <u>Contracts Clause of Article I, § 10 to the United States Constitution</u>

Plaintiffs have agreements with their franchisors, i.e., Honda, Kia, Toyota, etc., in which they are contractually required to vigorously and aggressively sell vehicles.  <u>See</u> <u>Rosatti</u> <u>Reply Decl.</u> ¶ 4, <u>Ex.</u> A.  EO 202.68 substantially impairs this contract and those of their customers.[4]

### iv. <u>Ninth & Tenth Amendments to the United States Constitution</u>

Notwithstanding Defendants' assertions to the contrary, the Ninth Amendment to the United States Constitution does not limit the protection it affords the "American people" to protection against actions taken by federal officials; rather, the Ninth Amendment contains broadly that the Constitution "shall not be construed [so as to] deny or disparage the rights retained *by the American people*.  <u>See</u> U.S. Const. amend. IX (emphasis added).

### v. <u>Violations under the Constitution of the State of New York</u>

Plaintiffs are likely to succeed under this cause of action for the same reasons above.

---

[4] If necessary, Plaintiffs respectfully request that this Court grant them leave to amend their complaint to specifically reference contracts between Plaintiffs and their franchisors.

### B. Plaintiffs Will Suffer Immediate & Irreparable Harm Absent Relief

As previously discussed, where, as here, Plaintiffs allege a violation of their constitutional rights under the Fourteenth Amendment, irreparable harm is established. Moreover, courts have routinely held that the loss of employees and customers resulting in the loss of a business constitutes irreparable harm.

### C. The Balance of Equities & Public Interest

There is no dispute as to the government's compelling interest in preventing the transmission of COVID-19. However, when challenged in this case, the government's reliance on data and experts it claims it used to promulgate EO 202.68, yet fails to provide the actual data here – and which actually establishes that the positive COVID cases **decreased by approximately 1% per week in each of the three weeks leading up to the enforcement of EO 202.68** – begs the question as to whether their conduct is remotely rationally related to their stated objectives.

This Court cannot, on this record, ignore Defendants' falling short of providing the very evidence they claim to have relied on to issue EO 202.68. Moreover, there is no evidence to suggest that preventing a customer from meeting with a salesperson inside the dealership without having to make an appointment will prevent the transmission of COVID-19.

Given the lack of any relationship between the challenged measures and the stated objectives, the balance of equities and the public interest weigh in favor of permitting Plaintiffs to operate their dealerships' sales operations in-person subject to the Guidelines already in place and narrowly tailored to meet the government's objectives.

## CONCLUSION

Accordingly, Plaintiffs respectfully request that this Court issue an Order granting Plaintiffs a preliminary injunction enjoining Defendants from enforcing EO 202.68 that requires Plaintiffs to reduce their in-person workforce by 100% in the so called "red zone" in which Plaintiffs' dealerships are located in the Orthodox community that Governor Cuomo specifically targeted in implementing EO 202.68.

Dated: Lake Success, New York
      October 21, 2020

**MILMAN LABUDA LAW GROUP PLLC**

    /s/
Jamie S. Felsen, Esq.
Michael J. Mauro, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY  11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
jamiefelsen@mllaborlaw.com
michael@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Plaintiff*