

STATE OF NEW YORK
OFFICE OF THE ATTORNEY GENERAL

LETITIA JAMES
ATTORNEY GENERAL

DIVISION OF STATE COUNSEL
LITIGATION BUREAU

Writer's Direct Dial: (212) 416-6287

By ECF                                                                                    December 11, 2020
Hon. William F. Kuntz, II
Eastern District of New York
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

>   Re:   *Plaza Motors of Brooklyn, Inc., et. al. v. Governor Cuomo, Mayor De Blasio, and Empire State Development Corporation*, 20-cv-04851 (WFK) (SJB)

Dear Judge Kuntz:

This Office represents Governor Andrew M. Cuomo and the Empire State Development Corporation ("ESD") ("State Defendants") in the above-referenced case. Pursuant to your Honor's November 30, 2020 order (ECF No. 41), this letter responds to Plaintiffs' November 30, 2020 letter supplementing their preliminary injunction motion, which was argued on October 22, 2020.

Contrary to Plaintiffs' claims, *Roman Catholic Diocese of Brooklyn New York v. Cuomo*, 592 U.S. ____ (Nov. 25, 2020); No. 20A87, 2020 WL 6948354 (Nov. 25, 2020), does not suggest that strict scrutiny applies to Fourteenth Amendment Equal Protection claims, which are ordinarily subject to rational basis scrutiny.[1] Indeed, as stated in Justice Gorsuch's concurrence (*Id.* at 4), "[r]*ational basis* review is the test this Court *normally* applies to Fourteenth Amendment challenges, so long as they do not involve suspect classifications based on race or some other ground, or a claim of fundamental right."

---

[1] Plaintiffs other claims will fail for various reasons: (1) the state law Equal Protection claims are barred by the Eleventh Amendment, *see Penhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 103-06 (1984); (2) the Commerce Clause does not apply here because the EO does not discriminate against out-of-state businesses, *see Murphy v. Lamont*, No. 20-CV-0694, 2020 WL 4435167, at * 15 (D. Conn. Aug. 3, 2020); (3) the Contracts Clause is inapplicable here because the EO does not impair any *existing* contract, *see Caver v. Nassau Cty. Interim Fin. Auth.*, 2018 WL 1970740, at *6 (E.D.N.Y. Apr. 26, 2018), *aff'd sub nom, Sullivan v. Nassau Cty. Interim Fin. Auth.*, 959 F.3d 54 (2d Cir. 2010); and (4) the Ninth and Tenth Amendments confer no private right of action and Plaintiffs' claims are completely meritless in any event. *See* State Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for a Preliminary Injunction ("State Def. Mem. in Opp. to PI") (ECF No. 20) at 16-23.

1

*Roman Catholic Diocese* involved a claim that the 10-person limit on houses of worship in "Red Zones" prescribed by Executive Order 202.68 ("the EO") violates the First Amendment's Free Exercise Clause because houses of worship are deemed to have been treated *more* harshly than secular entities that are considered "essential."[2] The Supreme Court applied strict scrutiny to the EO's 10-person limit on houses of worship because it concerned a fundamental right (religious freedom) and was not neutral, and thus found that the EO was not narrowly tailored to the State's compelling interest in dealing with the COVID-19 pandemic. *Id.* at 4.

Because this case involves neither a house of worship, the EO's 10-person limit, the Establishment Clause, nor any fundamental right, *Roman Catholic Diocese* is plainly inapposite here. Nor do Plaintiffs claim to be members of any suspect class. Thus, rational basis scrutiny applies to their Equal Protection claims. *See, e.g., Progressive Credit Union v. City of New York*, 889 F.3d 40, 51 (2018) (applying rational basis scrutiny to class of one Equal Protection claim). Under this level of review, laws "that [do] not employ suspect classifications or impinge on fundamental rights must be upheld against equal protection attack when the legislative means are rationally related to a legitimate governmental purpose. Such laws carry a 'presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." *Concerned Home Care Providers, Inc. v. Cuomo*, 783 F.3d 77, 90-1 (2d Cir. 2015) (quoting *Hodal v. Indiana*, 452 U.S. 314, 331 (1981)). Indeed, classifications that "neither proceed[] along suspect lines nor infringes fundamental constitutional rights must be upheld against [an] equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313-14 (1993).[3]

Contrary to Plaintiffs' claims, State Defendants have already produced ample data—much of which is publicly available—that supports the classifications under the EO, easily sufficient to pass the rational basis test and defeat Plaintiffs' attempt to meet their high burden for obtaining a mandatory preliminary injunction. *See People ex. Rel Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015); *see, e.g.,* https://www.governor.ny.gov/news/governor-cuomo-details-covid-19-micro-cluster-metrics. For example, State Defendants have presented data showing that the boundary lines for the "Red Zones" were rationally drawn around the areas with the highest COVID-19 spikes, after considering multiple factors, including: (i) 7-day rolling average positivity rates; (ii) population size and density in a given geographic area; and (iii) whether the spike in infection rates may be explained by a cluster in a single institution (e.g.,

---

[2] Pursuant to guidance under the EO, auto dealerships in a "red zone" are considered to provide an "essential service" and are allowed to perform remote, electronic sales, in-person sales via appointment, and the maintenance and service aspects of their business. *See* ECF No. 29.

[3] Notably, *County of Butler v. Wolf*, 2020 WL 5510690 (W.D.Pa. Sept. 14, 2020), upon which the Plaintiffs rely, applied rational basis scrutiny to plaintiffs' Equal Protection claims. After examining a challenge to public health measures combating the pandemic, the court held that Pennsylvania had a rational basis for reopening businesses on a county-by county basis when county COVID-19 infection rates reached certain milestones, noting that "*rational basis* does not require the granularity of a neighborhood by neighborhood plan." *Id.* at *30. Here, the EO applies restrictions on a far more granular level than a county-by-county basis.

nursing home, factory, college, etc.) rather than transmission throughout the community at large. *See* Howard A. Zucker declaration in opposition to Plaintiffs' motion for preliminary injunction dated October 20, 2020 ("Zucker Decl.") (ECF No. 22), at ¶ 56.[4]  Indeed, as demonstrated by Exhibit W—reproduced below—Plaintiffs' auto dealerships were well inside the Brooklyn "Red Zone" cluster, where there was a high concentration of COVID-19 positive cases. Zucker Decl. ¶ 83, Ex. W (ECF Nos. 22, 22-23). [5]



In Midwood, Brooklyn where Plaintiffs' dealerships are located, the positivity rate in the Brooklyn "Red Zone" was 7.67% during the week of September 30 through September 26, 2020, 6.69% during September 27 through October 3, 2020, and 5.86% during the week of October 4 through October 10, 2020. Zucker Decl. ¶ 49 (ECF No. 22).  During those same times, the statewide percent positivity rate, excluding "Red Zones," was 0.97%, 1.25%, and 1.18%, respectively. *Id.*  Thus, the data shows that average positivity rates in the "Red Zones" were substantially higher than the statewide average.  There is nothing irrational in the State taking steps to ensure that high average positivity rates in the "Red Zones" would continue to drop, and more importantly, not spread to neighboring communities.

Moreover, the number of COVID-19 cases in Plaintiffs' vicinity increased from September 6, 2020 to September 29, 2020—right before the Cluster Action Initiative went into

---

[4] Notably, the CDC has identified analogous factors in its guidance for community mitigation strategies. *See* https://www.cdc.gov/coronavirus/2019-ncov/community/community-mitigation.html.

It bears repeating that the criteria that the State Defendants used to draw these Zones are publicly available, and that they rely on these metrics when determining whether the Zones need to be modified. *See https://www.governor.ny.gov/news/governor-cuomo-details-covid-19-micro-cluster-metrics.*

3

effect. *See* Zucker Decl. ¶ 84, Ex. Y (ECF Nos. 22, 22-25) ("The week of September 6, 2020, there were 228 cases in the Brooklyn cluster Zones. During the week of September 29, 2020, the number of positive cases grew to 1,156."). The data casts considerable doubt on Plaintiffs' claims that there were no known positive cases among their hundreds of employees and thousands of customers, especially since individuals infected with COVID-19 can be asymptomatic or pre-symptomatic carriers. *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/planning-scenarios.html. In fact, between September 2, 2020 and October 8, 2020, there were 10 positive COVID-19 cases within a 1/8 mile buffer zone around Plaintiffs' dealership, 56 cases within a ¼ mile buffer zone, and 323 cases within ½ miles buffer zone. *Id.* at ¶ 85.

At bottom, Plaintiffs have utterly failed to demonstrate that they have a "clear or substantial" likelihood of success on the merits of their case. *See* State Def. Mem. in Opp. to PI at 11-23 (ECF No. 20). In citing the *Roman Catholic Diocese* case, they are applying the wrong legal standard to their Equal Protection claims. Moreover, the State Defendants' EO easily satisfies the correct level of scrutiny, as there plainly is a rational basis for imposing limited restrictions on automobile dealership operations in the "red zones," which will reduce the risks of transmission of COVID-19 and prevent the further spread of this highly infectious, deadly disease.[6]

As a further matter, Plaintiffs have not shown that the temporary measures implemented by the EO will cause them irreparable harm. Plaintiffs were never closed for business, and even during the four-week period that they were in a "Red Zone," they were able to conduct sales electronically, remotely, and in-person via appointment, as well as continue with the service and maintenance aspects of their business unabated. *Id.* at 23-4; *see supra* n. 2. That Plaintiffs' dealerships departed from the "Red Zone" weeks ago highlights that they do not face the type of imminent, irreparable harm necessary to support the extraordinary relief of a preliminary injunction. *See* ECF No. 36.

Finally, the balance of equities and considerations of the public interest weigh decisively against Plaintiffs' request for injunctive relief. *See* State Def. Mem. in Opp. to PI at 24-5 (ECF No. 20). Plaintiffs' interest in resuming walk-in sales of automobiles was far outweighed by the State Defendants' compelling public health imperative to prevent COVID-19 infection spikes from rapidly increasing and spreading throughout New York City. *Id.*

---

[6] Courts have repeatedly found that distinctions based on geographic location satisfy constitutional scrutiny. *See, e.g., County of Butler*, 2020 WL 5510690, at * 30*; Hampshire Recreation, LLC v. Vill. Of Mamaroneck*, 2016 U.S. Dist. LEXIS 39496, at * 7-9 (S.D.N.Y. Mar. 25, 2016) aff'd 664 F. App'x 98 (2d Cir. 2016); *Pappas v. Town of Enfield*, 602 F. App'x 35, 36-7 (2d Cir. 2015); *Harlen Assocs. v. Inc. Vill. Of Mineoloa*, 273 F.3d 494, 500 (2d Cir. 2001); *Jay Auto Ctr. Behrens*, 2008 U.S. Dist. LEXIS 144959, at 12-13 (S.D.N.Y. June 19, 2008).

Accordingly, State Defendants respectfully request that the Court deny Plaintiffs' motion for a preliminary injunction.

          Respectfully submitted,

          /s/ *Maryam Jazini Dorcheh*
          Maryam Jazini Dorcheh
          Assistant Attorney General
          Maryam.Jazini@ag.n.y.gov

cc: All counsel of record (via ECF)