UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
PLAZA MOTORS OF BROOKLYN, INC., *et al.*,

                Plaintiffs,

      v.

ANDREW M. CUOMO, BILL DE BLASIO, and
EMPIRE STATE DEVELOPMENT
CORPORATION,

                Defendants.
---------------------------------------------------------------X

**DECISION & ORDER**
20-CV-4851 (WFK) (SJB)

**WILLIAM F. KUNTZ, II, United States District Judge:** On October 8, 2020, Plaintiffs Plaza Motors of Brooklyn, Inc. d/b/a Plaza Honda, Plaza Automotive, Ltd. d/b/a Plaza Kia, Crystal Bay Imports Ltd. d/b/a Acura of Brooklyn, Plaza Oldsmobile, Ltd. d/b/a Plaza Toyota, Plaza Hyundai, Ltd. d/b/a Plaza Hyundai, and Crystal Motors of Bayside, Ltd. d/b/a Plaza Auto Leasing (collectively, "Plaintiffs") filed this action against Andrew Cuomo, in his official capacity as the Governor of the State of New York, the Empire State Development Corporation ("ESD," and collectively with Governor Cuomo, the "State Defendants"), and Bill de Blasio, in his official capacity as the Mayor of the City of New York (collectively with the State Defendants, "Defendants"). ECF No. 1. On October 16, 2020, Plaintiffs filed a First Amended Complaint. ECF No. 17. Plaintiffs seek a preliminary injunction, on which the Court heard oral arguments on October 22, 2020. ECF Minute Entry Oct. 22, 2020. For the reasons discussed below, Plaintiffs' motion for a preliminary injunction is DENIED.

## BACKGROUND

**I.  Factual Background**

    **A.  COVID-19 Pandemic**

At this point in the year 2021, the COVID-19 pandemic needs no introduction. Beginning in late February 2020, the novel coronavirus swept into the United States. Derrick Bryson Taylor, *A Timeline of the Coronavirus Pandemic*, N.Y. Times (January 10, 2021), https://www.nytimes.com/article/coronavirus-timeline.html. According to the Johns Hopkins Coronavirus Resource Center, the virus has infected over 97 million people across the world, with over 24 million confirmed cases in the United States. Johns Hopkins Univ. of Medicine, *Coronavirus Resource Ctr.*, https://coronavirus.jhu.edu/ (last visited Jan. 21, 2021). Tragically,

1

over 2 million people, including over 400,000 Americans, have lost their lives. *Id.* New York was particularly hard hit by the pandemic; across the state, more than 1.2 million people have tested positive for COVID-19 and more than 40,500 people have died. N.Y. State Dep't of Health, COVID-19 Tracker, https://covid19tracker.health.ny.gov/ (last visited Jan. 19, 2021). As eloquently stated by the Honorable Judge Nicholas G. Garaufis in a recent opinion:

> The most fortunate New Yorkers will remember always the devastation that the first wave of the pandemic wrought. Tens of thousands of others, disproportionately front-line workers, low income people, and people of color—or a combination thereof—will not . . . .
>
> New York was among the first states hit by the pandemic and, at its worst, the state had more COVID-19 cases than any single country in the world other than the United States . . . .

*Roman Catholic Diocese of Brooklyn, New York v. Cuomo*, 20-CV-4844, __ F. Supp. 3d __, 2020 WL 6120167, at *1 (E.D.N.Y 2020) (internal citations omitted).

### B. Governor Cuomo's Response to the COVID-19 Pandemic

Beginning on March 7, 2020, Defendant Governor Cuomo issued numerous executive orders to combat the COVID-19 pandemic. Decl. of Howard A. Zucker ¶ 22, ECF No. 22 ("Zucker Decl."). Such early initiatives included, but were not limited to: (1) Executive Order ("EO") 202, which declared a State of Emergency and suspended all state and local laws, rules, and regulations to the extent necessary to address the COVID-19 emergency, *id.*; (2) EO 202.3, which prohibited certain large gatherings and restricted operations for restaurants, bars, gambling establishments, gyms, and movie theaters, *id.* ¶ 30; and (3) EO 202.8, which mandated the reduction of onsite workforces for non-essential businesses by 100% and ordered the closure of barbershops, hair salons, tattoo or piercing parlors, and related personal care services, *id.* ¶ 34. On March 20, 2020, Governor Cuomo announced the ten-point New York State on PAUSE

initiative, which, *inter alia*, mandated closure of non-essential businesses, the practice of social distancing, and the use of precautionary sanitizing practices. *Id.* ¶ 36.

Following stabilization and decline of infection and death rates in May and June, *see id.* ¶¶ 38–39, New York transitioned from the New York on PAUSE initiative to the New York Forward initiative. *Id.* ¶ 39. The New York Forward initiative laid out a four-phase reopening plan "intended to begin a phased reopening of New York's economy in a targeted, measured way that would prevent any new spikes in COVID-19 cases." *Id.* ¶ 40.

In response to increased positive tests for COVID-19 in certain areas of the state, including Broome, Kings, Orange, Queens, and Rockland Counties, Governor Cuomo announced the Cluster Action Initiative. *Id.* ¶¶ 48–49, 53. The Cluster Action Initiative targets areas with the highest concentration of COVID-19 cases, known as "clusters," and the surrounding communities. *See id.* ¶¶ 53–54. It divides "clusters and the areas around them into three categories, with successively higher restrictions within each one: Red Zone – cluster Itself; Orange Zone – warning zone; and Yellow Zone – precautionary zone." N.Y. State, *Cluster Action Initiative*, https://forward.ny.gov/cluster-action-initiative (last visited Jan. 19, 2021). EO 202.68—which Plaintiffs challenge here—details the restrictions within each zone. *See* EO 202.68, available at https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO202.68.pdf. In "red zones":

> Non-essential gatherings of any size shall be postponed or cancelled; all non-essential businesses, as determined by the Empire State Development Corporation based upon published guidance, shall reduce in-person workforce by 100%; houses of worship shall be subject to a capacity limit of 25% of maximum occupancy or 10 people, whichever is fewer; any restaurant or tavern shall cease serving patrons food or beverage on-premises and may be open for takeout or delivery only; and the local Department of Health shall direct closure of all schools for in-person instruction, except as otherwise provided in Executive Order.

*Id.* In "orange zones":

3

>Non-essential gatherings shall be limited to 10 people; certain non-essential businesses, for which there is a higher risk associated with the transmission of the COVID-19 virus, including gyms, fitness centers or classes, barbers, hair salons, spas, tattoo or piercing parlors, nail technicians and nail salons, cosmetologists, estheticians, the provision of laser hair removal and electrolysis, and all other personal care services shall reduce in-person workforce by 100%; houses of worship shall be subject to a maximum capacity limit of the lesser of 33% of maximum occupancy or 25 people, whichever is fewer; any restaurant or tavern shall cease serving patrons food or beverage inside on-premises but may provide outdoor service, and may be open for takeout or delivery, provided however, any one seated group or party shall not exceed 4 people; and the local Department of Health shall direct closure of all schools for in-person instruction, except as otherwise provided in Executive Order.

*Id.* In "yellow zones":

>Non-essential gatherings shall be limited to no more than 25 people; houses of worship shall be subject to a capacity limit of 50% of its maximum occupancy and shall adhere to Department of Health guidance; any restaurant or tavern must limit any one seated group or party size to 4 people; and the Department of Health shall issue guidance by October 9, 2020 regarding mandatory testing of students and school personnel, and schools shall adhere to such guidance.

*Id.*

### C. Plaintiffs' Dealerships

Plaintiffs are automobile dealerships located in Brooklyn, New York. First Am. Compl. ("FAC") ¶ 7. Under EO 202.68, Plaintiffs were located in a "red zone," which required Plaintiffs to conduct automotive sales remotely, with in-person vehicle showing, return, and delivery by appointment only.[1] FAC ¶ 23. However, Plaintiffs' competitors, located merely a couple miles

---

[1] Although located in a "red zone" at the time of filing, Plaintiffs are now located in a "yellow zone." State Defs.' Letter at 1, ECF No. 36; *see also* Pls.' Letter in Resp. at 1, ECF No. 37. The State Defendants seem to suggest the case, or at least the motion for a preliminary injunction, is now moot because Plaintiffs "are no longer subject to the restrictions that they challenge in this case." State Defs.' Letter at 1. However, the Court agrees with Plaintiffs, Pls. Letter in Resp. at 1, this motion presents an issue "capable of repetition, yet evading review." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975). "A dispute qualifies for that exception only if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018) (internal quotation marks omitted). Considering the evolving nature of the pandemic, particularly the fact the world is currently experiencing another "wave," the Court finds the requirements for this exception are satisfied. In the event cases continue to rise, Plaintiffs could easily find themselves again located in a "red zone" and subject to the restrictions of EO 202.68.

away, outside of the "red zone," are not subject to the same restrictions and may continue in-person sales of automobiles. *Id.* ¶¶ 4, 56, 60.  Plaintiffs allege implementation of EO 202.68 will result in a revenue reduction of more than 400% and layoffs of Plaintiffs' employees. *Id.* ¶¶ 70–72.  In Plaintiffs' words:

> "EO 202.68 will completely devastate and in all likelihood destroy Plaintiffs' dealerships.  Between the readily foreseeable significant loss of their customers who will seek to purchase vehicles in person in order to on the spot test drive vehicles offered for sale and many of its employees, Plaintiffs will be unable to survive if EO 202.68 is enforced."

*Id.* ¶ 73.

Plaintiffs now bring this action seeking to enjoin enforcement of EO 202.68 as well as for compensatory damages.  FAC ¶¶ 1, 40.

## II.   Procedural History

Plaintiffs filed this action on October 8, 2020.  ECF No. 1.  As part of its initial case filings, Plaintiffs filed a motion for a temporary restraining order and a proposed order to show cause.  ECF No. 4.  On October 9, 2020, the Court denied Plaintiffs' motion for a temporary restraining order and scheduled an order to show cause hearing for October 22, 2020.  ECF No. 13.  On October 16, 2020, Plaintiffs filed the First Amended Complaint.  ECF No. 17.

In the First Amended Complaint, Plaintiffs argue the restrictions under EO 202.68 are "arbitrary, capricious, have no rational basis, constitute a violation of lawful procedure, are violative of the Plaintiffs' constitutional rights under federal and state law, and constitute an abuse of discretion."  FAC ¶ 34.  Plaintiffs claim the restrictions violate "(i) the Plaintiffs' rights to equal protection under the Fourteenth Amendment; (ii) the Commerce Clause of the United States Constitution; (iii) the Contracts Clause of the United States Constitution; (iv) the Ninth and Tenth Amendments to the United States Constitution; [and] (v) the Equal Protection Clause under the Constitution of the State of New York."  *Id.* ¶ 35.

On October 22, 2020, the Court held oral arguments on Plaintiffs' motion for a preliminary injunction. Prior to oral arguments, the parties submitted extensive briefing and supporting declarations for the Court's review. ECF Nos. 5–7, 20–23, 26–27. The parties also filed supplemental briefing with the Court's permission. ECF Nos. 29–30; 45, 47, 50.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right," but rather only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22–24 (2008); *see also Sussman v. Crawford*, 488 F.3d 136, 139 (2d Cir. 2007) (explaining preliminary injunction is an "extraordinary and drastic remedy, one that should not be granted unless the movant, by a *clear showing*, carries the burden of persuasion") (emphasis in original). Accordingly, courts generally grant preliminary injunctions only "where a plaintiff demonstrates 'irreparable harm' and meets one of two related standards: 'either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.' " *Oeoe-Missouria Tribe of Indians v. N.Y. State Dep't of Fin. Servs.*, 769 F.3d 105, 110 (2d Cir. 2014) (quoting *Lynch v. City of New York*, 589 F.3d 94, 98 (2d Cir. 2009)). However, to obtain a preliminary injunction against "governmental action taken in the public interest pursuant to a statutory or regulatory scheme," *id.* (quoting *Plaza Health Labs., Inc. v. Perales*, 878 F.2d 577, 580 (2d Cir. 1989)), a plaintiff cannot rely on the "fair ground for litigation" alternative and must prove likelihood of success on the merits. *Id.* "This exception reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly." *Able v. United States*, 44 F.3d

128, 131 (2d Cir. 1995). The moving party also must demonstrate a preliminary injunction is in the public interest. *Oneida Nation of N.Y. v. Cuomo*, 645 F.3d 154, 164 (2d Cir. 2011) (citing *Winter*, 555 U.S. at 19–20).

## **ANALYSIS**

The present case is not the first action challenging pandemic-related restrictions. Most district courts across the country, having occasion to rule on challenges to pandemic-related restrictions, have upheld such restrictions. *See Roman Catholic Diocese of Brooklyn*, 2020 WL 6120167, at *7 n.7 (collecting cases). The present case is also not the first action filed in this district challenging EO 202.68. In *Agudath Israel of Am. v. Cuomo*, 20-CV-4834, and *Roman Catholic Diocese of Brooklyn, New York v. Cuomo*, 20-CV-4844, churches and synagogues challenged EO 202.68 as a violation of the Free Exercise Clause of the First Amendment. In these cases, consolidated before the Supreme Court, the Court found the applicants were entitled to a preliminary injunction, having shown a likelihood of success on their First Amendment claims. *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). Plaintiffs in this case do not allege First Amendment violations. Hence, this Court analyzes EO 202.68 under a different level of scrutiny, more deferential to the Government's interest in managing the ongoing public health crisis. For the reasons discussed below, the Court denies Plaintiffs' motion for a preliminary injunction.

A preliminary injunction is an extraordinary and drastic remedy never to be awarded as of right. *Winter*, 555 U.S. at 24. A federal district court is to award a preliminary injunction only on a party's clear showing she is entitled to such relief. *Id.* at 22. To demonstrate an entitlement to relief, courts have traditionally required movants to establish: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of an injunction; (3) an

7

injunction would be in the public interest; and (4) the balance of the equities tips in their favor. *Id.* at 20.

## I. Likelihood of Success on the Merits

Plaintiffs bring claims, pursuant to 42 U.S.C. § 1983, arising under (1) the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution[2]; (2) the Commerce Clause of the United States Constitution; (3) the Contracts Clause of the United States Constitution; and (4) the Ninth and Tenth Amendments to the United States Constitution. FAC ¶ 35. The Court takes each claim in turn.

### A. Equal Protection

In evaluating an Equal Protection claim, the Court must first determine the appropriate level of scrutiny to apply to the government restriction. Significant discussion has ensued regarding whether the 1905 Supreme Court decision, *USA v. Jacobson*, replaces the usual standards of scrutiny in the present case, and all cases challenging COVID-19 restrictions. 197 U.S. 11, 38 (1905). However, Justice Gorsuch's concurrence in *Roman Catholic Diocese of Brooklyn v. Cuomo*, informs the Court's analysis and instructs the Court to apply its usual tiers of scrutiny. 141 S. Ct. at 70 (Gorsuch, J., concurring) ("*Jacobson* hardly supports cutting the Constitution loose during a pandemic."). Justice Gorsuch explained, "[a]lthough *Jacobson* pre-dated the modern tiers of scrutiny," the *Jacobson* standard "essentially applied rational basis review." *Id.*

Unless state action burdens a suspect class or impinges upon a fundamental right, that action is subject to rational basis review. *See Heller v. Doe by Doe*, 509 U.S 312, 320

---

[2] Plaintiffs also bring a claim under the Equal Protection Clause of the Constitution of the State of New York. FAC ¶ 35. Plaintiffs' Equal Protection claim under the New York State Constitution (Pl.'s Mem. at 20; FAC ¶¶ 112—122), is analyzed under the same standard as their federal challenge, and, thus, both claims fail for the same reasons. *Hernandez v. Robles*, 7 N.Y.3d 338, 362 (2006) ("[W]e have held that our Equal Protection Clause 'is no broader in coverage than the Federal provision'[.]").

8

(1993). Under rational basis review, a court must uphold the state action "if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." *Id.* at 113. Plaintiffs in this case do not purport to assert they are members of a suspect class and in fact, agree rational basis review applies to their Equal Protection claims. Memorandum in Support of Plaintiffs' Motion for a Temporary Restraining Order and Preliminary Injunction, ECF No. 5 at 1 ("Pl.'s Mem.").

As Plaintiffs in this case do not allege discrimination based on membership in a protected class, their Equal Protection claims must be premised on a theory of class-of-one or selective enforcement. *See Rankel v. Town of Somers*, 999 F. Supp. 2d 527, 544 (S.D.N.Y. 2014) (Seibel, J.); *Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013) (Ramos, J.). In evaluating these claims, and applying rational basis review, the Court is guided by Chief Justice Roberts' concurrence in *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020). Chief Justice Roberts explained the latitude of public officials "must be especially broad" when acting "in areas fraught with medical and scientific uncertainties." *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613 (2020) (Roberts, C.J., concurring) (quoting *Marshall v. United States*, 414 U.S. 417, 427 (1974)). This is particularly true when "a party seeks emergency relief in an interlocutory posture, while local officials are actively shaping their response to changing facts on the ground." *Id.* at 1614. As explained below, Plaintiffs have failed to show a likelihood of success on the merits under either a selective enforcement or class-of-one theory.

    a. <u>Class-of-One</u>

To prevail on their Equal Protection claim as a class-of-one, Plaintiffs must show (1) they have been intentionally treated differently from others similarly situated and (2) there is

9

no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *see also Giordano v. City of New York*, 274 F.3d 740, 743 (2d Cir. 2001). The claim requires the "level of similarity between plaintiffs and the persons with whom they compare themselves . . . be extremely high." *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (internal citations omitted). Additionally, "[t]o prove a violation of the Equal Protection Clause . . . a plaintiff must demonstrate that [they were] treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005). Plaintiffs have not met this burden.

First, Plaintiffs have not put forth facts showing they have been intentionally treated differently from others similarly situated. Plaintiffs identify "dealerships out of the 'red' zones" as their comparator for their Equal Protection claim. Pl.'s Mem. at 17. However, dealerships within the red zones cannot be fairly considered "similarly situated" to those outside of the red zones. On the relevant metric, rate of COVID-19 infections, dealerships inside and outside of the red zones are not similarly situated—with car dealerships inside the red zone, by definition, in areas with higher rates of COVID-19 infections, than those outside of the red zones. *See* Zucker Decl. ¶ 49; *see also Lilakos v. New York City*, 808 F. App'x 4, 8 (2d Cir. 2020) (dismissing Equal Protection claim for failure to allege specific facts showing the comparators are "similar in relevant respects"). The correct comparator for Plaintiff's class-of-one claim is other dealerships *inside* the red zones. However, the restrictions imposed by EO 202.68 apply equally to all car dealerships within the red zones, including the various dealerships owned by Plaintiffs, defeating their class-of-one Equal Protection claim.

Even if Plaintiffs were correct to compare their treatment under EO 202.68 to the treatment of dealerships outside of the red zones, Plaintiffs have put forth no facts alleging the disparate

10

treatment was the result of intentional or purposeful discrimination. Contrastingly, Defendants have put forth facts alleging the disparate treatment between businesses inside and outside of the red zones is attributable to the differing COVID-19 infection rates in the respective areas. Zucker Decl. ¶ 49. This distinction survives rational basis review, defeating Plaintiff's class-of-one Equal Protection claim.

    b. <u>Selective Enforcement</u>

To prevail on their Equal Protection claims under a selective enforcement theory, Plaintiffs must show "(1) . . . compared with others similarly situated, they were selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Joglo Realties, Inc. v. Seggos*, 229 F. Supp. 3d 146, 153 (E.D.N.Y. 2017) (Ross, J.) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)). Impermissible motive is the key issue under a selective enforcement theory. *See Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16–17 (2d Cir. 1999).

Plaintiffs have clearly failed to show an impermissible motive underlies EO 202.68. To the contrary, the Government had laid out detailed reasoning justifying its decision to categorize COVID-19 clusters under one of the three zone types. *See* N.Y. State, *Cluster Action Initiative*, https://forward.ny.gov/cluster-action-initiative (last visited Jan. 19, 2021). The evidence submitted by Defendants corroborates the purpose of EO 202.68 is to intervene and enforce heightened protocols in geographic areas experiencing high levels of infection.

The Court is satisfied the imposition of EO 202.68 was motivated by a desire, guided by science, to protect New Yorkers from an ongoing pandemic, not a desire to impermissibly target car dealerships. Because Plaintiffs have failed to show any disparate treatment was based on an

11

impermissible government motive, Plaintiffs have failed to show a likelihood of success on the merits with respect to their Equal Protection claims.

### B. The Commerce Clause

The Commerce Clause "not only grants Congress the authority to regulate commerce among the States, but also directly limits the power of the States to discriminate against interstate commerce. This 'negative' aspect of the Commerce Clause, prohibits economic protectionism– that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273 (1988) (internal citations omitted). Thus, it restricts a state from disadvantaging *out of state* businesses in favor of its own. *Oregon Waste Systems, Inc. v. Dep't of Environ. Quality of State of Oregon*, 511 U.S. 93, 99 (1984).

Courts have identified several ways through which a state statute may violate the Dormant Commerce Clause. "First, a statute that clearly discriminates against interstate commerce in favor of intrastate commerce is virtually invalid per se, and can survive only if the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism. Second, if the statute does not discriminate against interstate commerce, it will nevertheless be invalidated under the *Pike* balancing test if it imposes a burden on interstate commerce incommensurate with the local benefits secured." *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004) (referring to *Pike v. Bruce Church, Inc.,* 397 U.S. 137 (1970)) (internal citations omitted).

Firstly, EO 202.68 does not "clearly discriminate" against interstate commerce in favor of intrastate commerce. In fact, EO 202.68 makes no distinction between out-of-state and in-state car dealerships, regulating only those car dealerships within New York State, based on relevant public health metrics. Second, any burden imposed by EO 202.68 on interstate commerce is

12

clearly commensurate with the local benefits secured by the order, satisfying the standard under *Pike*. EO 202.68 imposes a temporary restriction on Plaintiff's in-person, walk-in sales in order to facilitate social distancing and slow the spread of COVID-19 infections. For these reasons, Plaintiffs have failed to show a likelihood of success on the merits with respect to their claims under the Dormant Commerce Clause.

### C. The Contracts Clause

The Contracts Clause of the United States Constitution provides that "No State shall . . . pass any . . . Law impairing the Obligation of Contracts[.]" U.S. Const., art. I, § 10, cl. 1. To state a claim for violation of the Contract Clause, a plaintiff must allege facts demonstrating a state law's "substantial impairment of a contractual relationship." *General Motors Corp. v. Romein*, 503 U.S. 181, 1986 (1992). A state law will survive a Contracts Clause challenge if it serves "a significant and legitimate public purpose" and "the adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.' " *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411–12 (1983); *see also Buffalo Teachers Fed'n. v. Tobe*, 464 F.3d 362, 366–67 (2d Cir. 2006) ("[T]he Contracts Clause's . . . does not trump the police power of a state to protect the general welfare of its citizens, a power which is 'paramount to the rights under contracts between individuals[.]' ").

Additionally, the Contracts Clause only restricts states from impairing obligations under *existing* contracts. *See, e.g.*, *Romein*, 503 U.S. at 182; *Carver v. Nassau Cty. Interim Fin. Auth.*, 2018 WL 1970740, at *6 (E.D.N.Y. 2018) (Seybert, J.), aff'd sub nom. *Sullivan v. Nassau Cty. Interim Fin. Auth.*, 959 F.3d 54 (2d Cir. 2020) ("It is clear, however, that the contracts clause prohibits the impairment by the state of *existing* contracts but does not apply to contracts created

13

after the allegedly-offensive law was enacted.") (emphasis in original) (internal quotations omitted).

Plaintiffs do not identify any contracts predating EO 202.68 that are impaired by EO 202.68. Instead, Plaintiffs allege EO 202.68 impairs their ability to "enter into contracts with customers in order to purchase or lease vehicles because no customer will conduct sales remotely if a dealership merely a couple miles away can allow them to test drive a vehicle and negotiate the price in person at the same time." Pl.'s Mem. at 19. Because the Contracts Clause only protects existing contracts and Plaintiffs have failed to identify any existing contract impaired by EO 202.68, Plaintiffs have failed to establish a likelihood of success on the merits with respect to their Contracts Clause claim.

### D. Ninth and Tenth Amendments

Plaintiffs additionally assert claims under the Ninth and Tenth Amendments to the United States Constitution. Plaintiffs have failed to show a likelihood of success on the merits on either claim. Firstly, the Ninth Amendment "is not an independent source of constitutional rights that may be asserted in a civil rights action." *See Lloyd v. Lee*, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008) (Chin, J.). Moreover, the Ninth Amendment has not been incorporated into the Due Process Clause of the Fourteenth Amendment, and thus has no applicability to claims against non-federal actors. *Abrahams v. State of Conn. Dep't of Soc. Servs.*, 2018 WL 995106, at *10 (D. Conn. 2018) (Haight, J.). For these reasons, Plaintiff's Ninth Amendment claim necessarily fails.

The Tenth Amendment serves "to limit Congress from usurping power that was reserved to the states." *See Padavan v. United States*, 82 F.3d 23, 29 (2d Cir. 1996). It provides "the powers not delegated to the United States by the Constitution, nor prohibited by it to the

14

States, are reserved to the States respectively, or to the people." Here, Plaintiffs are challenging state and local action; they do not allege any federal action. Thus, Plaintiffs cannot succeed on a Tenth Amendment claim.

## II. Irreparable Harm

Although the Court is not required to consider the other preliminary injunction factors because the Court found Plaintiffs are unlikely to succeed on the merits of any of their claims, *Comcast Corp. v. Rovi Corp.*, 16-CV-3852, 2016 WL 7235802, at *4 (S.D.N.Y. 2016) (Oetken, J.), the Court briefly analyzes these factors and determines they also weigh against the issuance of a preliminary injunction.

For the purposes of a preliminary injunction, irreparable injury "means injury for which a monetary award cannot be adequate compensation." *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir. 1979); *see also CRP/Extell Parcel I, L.P. v. Cuomo*, 394 F.Appx. 779, 781 (2d Cir. 2010) ("We have long held that an injury compensable by money damages is insufficient to establish irreparable harm."). Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999).

As a general matter, courts should not issue a preliminary injunction merely to prevent some remote or speculative future injury. *Winter*, 555 U.S. at 22. Rather, a party seeking a preliminary injunction must show "irreparable injury is *likely* in the absence of an injunction." *Id.* (emphasis in original).

Because Plaintiffs have failed to show a likelihood of success on the merits with respect to any of their alleged constitutional violations, Plaintiffs are not entitled to the "favorable

15

presumption of irreparable harm" that arises when such a showing is made. *Jolly v. Coughlin*, 76 F.3d 468 (2d Cir. 1996). Plaintiffs' claim of injury is speculative. While EO 202.68 may economically impact Plaintiffs, the order is temporary and permits plaintiffs to schedule in-person appointments for current and potential customers. EO 202.68 also permits Plaintiffs to continue the service and maintenance aspects of their business. Plaintiffs have not set forth facts showing how the temporary restriction on in-person, walk-in sales amounts to more than financial harm that could be compensated at the end of successful litigation. Therefore, Plaintiffs have failed to show irreparable harm.

### III. Public Interest and Balance of Equities

Here, both the public interest and the balance of equities weigh heavily against Plaintiffs. As discussed above, the restrictions imposed by the Defendants were designed to slow the spread of COVID-19, a deadly and highly contagious disease. Serious public health consequences could result if Defendants are enjoined from enforcing the restrictions, as it could undermine both the City and State's ongoing effort to save lives and ultimately reopen businesses. The current public health crisis presents a dynamic situation fraught with uncertainty. In these unprecedented times, it is not the Court's role to second-guess the decisions of state officials who have the expertise to assess the COVID-19 pandemic and institute appropriate measures. The Plaintiffs' interest in continuing to conduct in-person, walk-in sales is clearly outweighed by the Government and the public's interest in slowing the spread of COVID-19 and protecting the health and safety of all New Yorkers.

## **CONCLUSION**

There are undoubtedly those who worship the automobile, but the Founding Fathers were not among their ranks. For the foregoing reasons, the Court finds Plaintiffs have failed to satisfy

the requirements for the Court to issue a preliminary injunction. Accordingly, Plaintiffs' motion for a preliminary injunction is DENIED.

**SO ORDERED.**

_s/ WFK_
HON. WILLIAM F. KUNTZ, II
United States District Judge

Dated: January 22, 2021
       Brooklyn, New York